United States District Court
In The Eastern District of Michigan Southern Division

DAMITA C. JOHNSON EL BEY f.k.a.
DAMITA COLLETTE JOHNSON
Claimant/Plaintiff
[In Propria Persona]

Honorable Terrence G. Berg

Magistrate Judge Mona K. Majzoub

Case No. 13-cv-12170

vs.

BANK OF AMERICA N.A. d.b.a. BAC HOME
LOANS SERVICING, LP; THE BANK OF NEW
YORK MELLON; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC.

Respondents/Defendants

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND
## IN OPPOSITION OF DEFENDANTS MOTION TO DISMISS AND OTHER FILINGS

### (RESPONSE DUE WITHOUT ORAL ARGUMENT)

# TABLE OF CONTENTS

Questions Presented..................................................................................................................3

Introduction............................................................................................................................4

Statement of Facts..................................................................................................................4

Standard of Review.................................................................................................................7

Argument...............................................................................................................................11

    I.      Plaintiff has standing to reclaim her nationality and sue and be sued under any name she chooses.........................................................................................................................11

    II.     Plaintiff has standing to challenge the Defendants subject Notice of Removal from State Court under original diversity jurisdiction...............................................................................12

    III.    The state court has jurisdiction Over the Proceeding....................................................13

    IV.    This Court Should Abstain From Exercising Jurisdiction Over The State Court Proceeding...............13

    V.     This Court Should Remand The Proceeding....................................................................13

    VI.    Plaintiff claim states a claim upon which remand can be granted......................................13

Conclusion.............................................................................................................................15

Certificate of Mailing.............................................................................................................16

Index of Exhibits...................................................................................................................17

Controlling or Most Appropriate Authority...............................................................................18

## QUESTIONS PRESENTED

I.   Does plaintiff lack rights and standing in reclaiming her nationality as an aboriginal indigenous Native American woman domiciled, and a natural-born citizen of, Michigan State Republic County of Wayne? **Plaintiff answer "NO", Defendants would answer Yes**

II.  Has plaintiff attempted to defraud anyone or the courts of the United States by asserting her name correction and nationality affidavits of record? **Plaintiff answer "NO", Defendants would answer "YES".**

III. Does Plaintiff lack standing to sue and be sued under any name she chooses in the state or federal courts of the United States of America? **Plaintiff answer "NO", Defendants would answer "YES".**

IV.  Has plaintiff attempted to defraud anyone or the State or Federal court of jurisdiction? **Plaintiff answer "NO", Defendants would answer "YES".**

V.   Have Defendants brokered, made or serviced mortgage loans in accordance with all state and Federal laws. **Plaintiff answer "NO", Defendants would answer "?".**

VI.  Does Plaintiff have a Contract of Record with any of the Attorneys of record for Defendants? **Plaintiff answer "NO", Defendants would answer "?".**

VII. Have any of the Defendants provided Statements of Disclosure of Corporate Affiliations and Financial Interest? **Plaintiff answer "NO", Defendants would answer "?".**

VIII. Have the Defendant Bank of New York Mellon provided Statements of Disclosure of Corporate Affiliations and Financial Interest, which would provide that Bank of New York Mellon has no interest in said action and is not a party to this case? **Plaintiff answer "NO", Defendants would answer "?".**

IX.  Does Plaintiff lack standing to challenge Defendants subject Notice of Removal From State Court pursuant to 28 USC Sec(s). 1332, 1441 and 1446 thereby extinguishing all of plaintiff's rights to the property in said Assignment of Mortgage and Sheriff Deed on Mortgage Sale? **Plaintiff answer "NO", Defendants would answer "YES".**

X.   Have Defendants executed fraudulent documents styled as Assignment of Mortgage in the State of Michigan County of Oakland. **Plaintiff answer "YES", Defendants would answer "NO".**

XI.  Have Defendants executed a fraudulent document styled as Sheriff Deed On Mortgage Sale in the State of Michigan County of Wayne? **Plaintiff answer "YES", Defendants would answer "NO".**

XII. Have Defendants executed the Sheriff Deed on Mortgage Sale thereby auctioning/selling and thereby extinguishing all of plaintiff's rights to the property at <u>public venue, that being the place of holding the Circuit Court</u> for Wayne County where the premises are situated? **Plaintiff answer "YES", Defendants would answer "NO".**

XIII. Have Defendants filed an action to determine interest in land pursuant to MCR 3.411 Civil Action to Determine Interest in Land? **Plaintiff answer "NO", Defendants would answer "?".**

XIV. Have Defendants <u>title</u> to the mortgaged premises [in regards to Assignment of Mortgage and Sheriff Deed on Mortgage Sale] <u>been made absolute</u> for the recovery of possession of premises as provided by state law MCL 600.2932 Quieting Title; interest of plaintiff; action by mortgagee; establishment of title; tenancy in common; actions], specifically MCL 600.2932 Sec. (2)? **Plaintiff answer "NO", Defendants would answer "?".**

XV.  Does Defendants establish In regards to the Sheriff Deed on Mortgage Sale of record that the venue was pursuant to MCL 600.1605 Venue; real actions; replevin **Plaintiff answer "NO", Defendants would answer "?".**

XVI. Does plaintiff fail to state a claim upon which remand may be granted and ordered by the Court? **Plaintiff answer "NO", Defendants would answer "YES".**

# INTRODUCTION

Plaintiff brings this action; Brief in Support of Plaintiff's Motion to Remand In Opposition of Defendants Notice of Removal From State Court on the basis that Defendants do not have statutory authority to remove plaintiff's claim pursuant to provisions of Michigan and Federal statutes. The Court has invited parties to Respond and brief the issues to Defendants Motion to Dismiss concerning various matters contained in this proceeding. As provided in more detail in the Statement of Facts and Arguments below this court does have related "related-to " jurisdiction over all matters in this proceeding but should abstain from hearing these matters in the interest of justice and comity pursuant to 28 USC Sec. 1441. Therefore plaintiff moves this Court to remand the proceeding back to the State Court.

# STATEMENT OF FACTS

1.  Defendants Notice of Removal is in fact governed by 28 USC Sec. 1441 and with rare exceptions a case may be removed only if at the time of removal the case could be filed in federal court and pursuant to 28 USC Sec. 1447 Procedure after removal generally a case may be remanded back to state court. Removal does indeed require, an independent ground for subject-matter jurisdiction such as diversity jurisdiction or federal jurisdiction and if every defendant desires removal (unanimity rule) and defendants and all attorneys of record for defendants prior to Plaintiffs filing of the Action to Quiet Title have failed to satisfy the "rule of unanimity."

2.  Although Defendants have a right to remove cases on the basis of diversity, federal question, or other specific statutory grounds, it has been universally held that any removal attempt should be viewed with suspicion and that the case should be remanded if there is any doubt as to whether the federal court has subject matter jurisdiction. This is because state courts are of a general jurisdiction empowered to hear cases arising under either federal or state law, but federal courts are tribunals of limited jurisdiction that may resolve civil disputes only if the plaintiff's well-pleaded complaint raises an issue of federal law or involves a matter of state law between completely diverse parties and the amount in controversy exceeds $75,000. Thus, the case law encourages federal judges to remand a case to state court—where it may always be heard—rather than risk erroneously exercising jurisdiction and having an appellate court vacate all of there decisions and/or dismiss the case several years down the road.

3.  Plaintiff is in opposition to Defendants Notice of Removal from State Court diversity action since defendants are citizens of the State of Michigan or either citizens of another state doing business in the State of Michigan where the Action was commenced.

4.  The essentials of Plaintiff's action commenced in State Court provides:

    I.  Status, standing, venue and all elements of subject-matter jurisdiction, including compliance with substantive and procedural due process requirements, have been established by plaintiff and are present in record;

    II.  Facts of the case has been established in record;

    III.  Unless stipulated by agreement, facts have been verified by competent witnesses via testimony (affidavit, deposition or direct oral examination);

    IV.  The law of the case affirmatively appears in record and proves application of law to stipulated or otherwise provable facts; and

4

V.   The trial court or decision-maker, whether administrative or judicial, must render a written decision that includes findings of fact and conclusions of law. The exception to this requirement is the decision of juries in common law courts.

5.   Plaintiff states for the record, the essentials of Plaintiff's Writ of Quo Warranto with affidavit incorporated and attached exhibits provide for the complete dismissal of all allegations against **Minister Damita C. Johnson El Bey** and not to defraud the U.S. District Court of jurisdiction; and to completely suspend the ability of BODMAN LLP et al [attorneys] to proceed or continue its conduct until the judge(s) provides authentic answers to the claims made by defendants.

- **Definition - Quo Warranto** – A common law writ used to inquire into the authority by which a public office is held or a franchise is claimed. Also termed Writ of Quo Warranto. The Federal Rules of Civil Procedure are applicable to proceedings for quo warranto "to the extent that the practice in such proceedings is not set forth in statutes of the United States and has therefore conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)4. Reference Black's Law Dictionary 8th Edition pg. 1285.

6.   Plaintiff states for the record, after initial research Plaintiff's Certified Colonial Title Search provides that Defendants have executed fraudulent documents styled as Assignment of Mortgage **[Instrument Number 2010355970; Li – 48793; Pa-1046-1046] [Exhibit A – A-2]** in the State of Michigan County of Oakland.

7.   Plaintiff states for the record, after initial research Plaintiff's Certified Colonial Title Search provides that the Defendants have executed a fraudulent document styled as **Sheriff Deed on Mortgage Sale** record number **[2012459872; Liber 50301 Page 524] of Wayne County Register Deeds** recording date November 16, 2012 [Exhibit B]; whereby a Felicia Mack conducted a Sheriff's Sale in the State of Michigan County of Wayne as "**Deputy Sheriff**".

8.   Plaintiff states for the record, Plaintiff received a Freedom of Information Act Request (FOIA) denial after requests were made to the Wayne County Sheriff Court Division with Felicia Mack's Appointment as **"Special"** Deputy Sheriff attached **[Exhibit C- C-2]**

9.   Plaintiff states for the record, with a careful analysis of defendants Brief in Support of Motion to Dismiss; Exhibit 10 the **Affidavit of "Deputy Sheriff"**, states Felicia Mack is none other than **"Deputy Sheriff"** and the Wayne County Sheriff Court Division has provided through FOIA Request that Felicia Mack has none other than a Appointment of **"Special"** Deputy Sheriff for and in the County of Wayne subscribed and sworn to on April 19, 2013.

10.  Plaintiff States for the record, with a careful analysis of Defendants Brief in Support of Motion to Dismiss, Exhibit 10 **Affidavit of "Deputy Sheriff"**; the Sheriff Deed on Mortgage Sale and the Appointment of Special Deputy Sheriff for Felicia Mack, the signatures of Felicia Mack does not match in either of the three documents and Plaintiff believes and herein alleges that at all times herein mentioned each of the defendants and others have committed fraud upon the 3rd Judicial Circuit Court for and in the County of Wayne and the U.S. District Court In The Eastern District of Michigan Southern Division by placing fraudulent defenses and documents of record before either court which also contains forged and/or robo-signed signatures of Felicia Mack.

11.  Defendant claims an interest in the same property as follows: Fee Simple by way of a Sheriff Sale and as a result of the conduct of the Defendants the subject property has a cloud in title and is currently in the name of the Defendants by way of the Sheriff's Deed on Mortgage Sale.

12.  The Sheriff Deed fraudulently misrepresents that Felicia Mack is the "Deputy Sheriff" therefore the deed is improper because Felicia Mack is neither the sheriff, under-sheriff, nor the deputy.

13.  The court can take JUDICIAL NOTICE of the fact that in Wayne County, Benny Napoleon is Sheriff and Daniel Pfannes is the Undersheriff and there are three Deputy Chiefs none of whom are Felicia Mack and facts show that the mortgage fails to provide a power of sale provision in the name of Felicia Mack.

14.  Plaintiff believes and thereon alleges that, at all times herein mentioned, each of the defendants et al sued herein will be attempting to defraud the courts of the United States, by asserting the administrative function has been assigned to individuals that have been "deputized" by the sheriff.

15.  Plaintiff states for the record, Defendants have already established the essentials to its Sheriff Deed on Mortgage Sale executed thereby auctioning/selling and thereby extinguishing all of plaintiff's rights to the property at **public venue, that being the place of holding the Circuit Court** for Wayne County where the premises are situated.

16.  Plaintiff states for the record, the Sheriff Deed lacks authority and jurisdiction, and is declared a nullity. The law requires proof of jurisdiction to appear on the record of the Administrative Agency and all administrative proceedings in the place of holding in the Circuit Court.

17.  Plaintiff states for the record, Defendants have not established that **title** to the mortgaged premises in regards to Assignment of Mortgage and Sheriff Deed on Mortgage Sale [in the circuit court] has **been made absolute** for the recovery of possession of premises as provided by state law MCL 600.2932 Quieting Title; interest of plaintiff; action by mortgagee; establishment of title; tenancy in common; actions], specifically MCL 600.2932 Sec. (2). Plaintiff has not been provided with records or a case number in regards to the Sherriff Deed on Mortgage Sale held at **public venue, that being the place of holding the Circuit Court** for Wayne County where the premises are situated.

18.  Plaintiff states for the record, Defendants have already established in regards to the Sheriff Deed on Mortgage Sale of record that the venue was proper in the circuit court county of Wayne.

19.  Plaintiff states for the record, Defendants have not provided that venue in the circuit court was established pursuant to MCL 600.1605 Venue; real actions; replevin.

20.  Plaintiff states for the record, Plaintiff does not have a contract of record with any of the Attorneys of record for Defendants specifically BODMAN LLP per Plaintiff's Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract With my Counter-Offer of Contract # DCJEB-18945 of record made to BODMAN LLP et al **[Exhibit D-D-4]**.

21.  Plaintiff states for the record, a payment was issued **[Exhibit E]** from an Independent foreclosure review involving the country's mortgage crisis and the issues surrounding the servicers; trustees and other third party vendors in relation to the foreclosure concerning Bank of America N.A.. The Board of Governors of the Federal Reserve System and the Office of the Comptroller of Currency have required an Independent Foreclosure Review to identify customers who may have been financially

injured as a result of errors; misrepresentations, or other deficiencies made during the foreclosure process by Defendants Bank of America N.A..

22.   Plaintiff states for the record, the original note provided at closing was unendorsed and plaintiff was not provided with a history of the loan from its inception to present or who actually provided the funding for any alleged loan or promise to pay with verified proof of the transactions made and as provided in plaintiff's Certified Colonial Title Search, the alleged Mortgage and **"Note" [Exhibit F – F-3]** contains two robo-stamps which states "Pay to the Order of" "Without Recourse" Bank of America N.A, signed by alleged Michelle Sjolander and Laurie Meder as Senior Vice Presidents provided by Defendants as exhibited in defendants Brief in Support of Motion to Dismiss; Exhibit 3, was not filed in the Wayne County Register Deeds Office prior to my filing an Action to Quiet Title.

23.   Plaintiff states for the record, Defendants document of record Sheriff Deed on Mortgage Sale executed in the Third Judicial Circuit Court County of Wayne by Deputy Sheriff Felicia Mack and all other documents of record should be redressed and a remand of Defendants Notice of Removal from State Court is apparent and imperative in order to correct the records of title found in Bernard J. Youngblood Wayne County Register of Deeds Office and also the Circuit Court Records.

24.   Plaintiff states for the record, Defendants MERS Assignment of Mortgage to Bank of America N.A. executed on 5/19/09, and filed in Bernard J. Youngblood Wayne County Register of Deeds office contains the signature of and alleges the **Vice President of MERS is none other than Ellen L. Coon.**

25.   Plaintiff does not fail to state a claim upon which Defendants Notice of Removal From State Court may be remanded and a order to remand being granted by this honorable Court pursuant to 28 USC Sec. 1447.

26. Plaintiff states for the record, that MERS assignments to mortgage servicers and / or trustees filed in Bernard J. Youngblood Wayne County Register of Deeds office contains fraudulent signatures, per the attached Examples: **[Example 1]** this Assignment of Mortgage to Bank of New York Mellon **[Instrument Number 209336964; Li – 41848; Pa-798-798]** was also executed on **5/19/09** but contains the signature of and alleges that **MERS Vice President is none other than Kenneth Kurel**. **Property owner initials** _UNEB_.

27. Plaintiff states for the record, per the attached Examples: Affidavit of Recording **[Example 2]**; filed in Bernard J. Youngblood Wayne County Register of Deeds office with attached Certified Securitization Audit **[Example 3 (1-16)]** and PSA Attestation **[Example 4]** provides that the Defendants Bank of America N.A. is servicer; and MERS and Bank of New York Mellon (Trustee) CWABS Inc. Asset-Backed Certificate Series 2004-5 Trust have executed the above exhibited [Assignment of Mortgage **Instrument Number 209336964; Li – 41848; Pa-798-798**] improperly and have been involved in activities which violates the MANNER IN WHICH ALL ASSETS [ASSIGNMENT, MORTGAGE, NOTE, ETC.] MAY BE PROPERLY TRANSFERRED TO THE TRUST. The Pooling and Servicing Agreement Attestation provides absolute indicia of reliability and is only being submitted as evidence that defendants Bank of America N.A., "MERS" and Bank of New York Mellon have been involved in suspicious activities of fraud under **state and federal laws**; the Certified Securitization Audit evidences on Pg. 15, in giving the certification for the Securitization Audit; the Senior Managing Director reasonably relied on information provided to him by The Bank of New York Mellon, as (Trustee). **[Property Owner's Initials _UNEB._]**

# STANDARD OF REVIEW

The court must remand the proceeding back to state court pursuant to 28 USC Sec. 1447. To avoid remand Defendants must allege enough facts supporting Defendants jurisdiction to the Notice of Removal From State Court and the Notice to Dismiss and that the evidence [documents submitted and language] is plausible on its face with actual true and correct defenses that are enough to raise a right to removal and dismissal beyond speculations or assumptions. Removal does indeed require, an independent ground for subject-matter jurisdiction such as diversity jurisdiction or federal jurisdiction and if every defendant desires removal (unanimity rule) and defendants and all attorneys of record for defendants prior to Plaintiffs filing of the Action to Quiet Title have failed to satisfy the "rule of unanimity," and Plaintiff has not been made privy that all defendants [served attorneys of record] prior to Plaintiff's filing in the State Court have desired removal in harmony and it has been universally held that any removal attempt should be viewed with suspicion and that the case should be remanded if there is any doubt as to whether the federal court has subject matter jurisdiction.

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

I.      As provided in the Sheriff Deed on Mortgage Sale the auction took place in the **public venue, that being the place of holding the Circuit Court** and has inconceivably been placed under the Third Judicial Circuit Court's jurisdiction. The Sheriff Deed goes on to describe Felicia Mack as being the Deputy Sheriff in and for the County of Wayne and according to the Michigan Rules of Court stated at **MCR "Rule 3.411. Civil Action to Determine Interest in Land. (A)** This rule applies to actions to determine interests in land under MCL § 600.2932.

II.     Under State law the Statutory requirements the [sheriffs] must follow pursuant to the governing statute **MCL § 600.3216**, which sets forth the requirements for the foreclosure of mortgages in the State of Michigan. Said statute further specifies who must conduct the sale. During Plaintiff's own initial research Plaintiff received a Freedom of Information Act Request (FOIA) denial after request were made to the Wayne County Sheriff Court Division with Felicia Mack's Appointment as **"Special"** Deputy Sheriff, therefore deed is unequivocally improper, and therefore plainly violates the statute **MCL § 600.3216**, as defective, and should be cancelled as void in the Circuit Court, said statute is clear the sale shall be made by the person appointed for that purpose in the mortgage, or by three individuals the **"sheriff", "undersheriff", or a "deputy sheriff"** of the county who are authorized to conduct a sale, which none of the authorized individuals signed the sheriff deed.

III.    The court can take JUDICIAL NOTICE of the fact that in Wayne County, Benny Napoleon is Sheriff and Daniel Pfannes is the Undersheriff and there are three Deputy Chiefs none of whom are Felicia Mack and facts show that the mortgage fails to provide a power of sale provision in the name of Felicia Mack.

IV.     It is essential to note that **MCL § 51.70** was first enacted in 1846 whereby the power to appoint a **"special"** deputy sheriff is derived from this statute. **MCL § 51.70 Deputy Sheriffs; appointment; revocation; special deputies; responsibility for acts, defaults, misconduct; and bond.** In support of the points of law, three other Michigan courts have addressed the specific issue as to whether a Deputy Sheriff had been properly appointed and the following cases have ruled that the deputy sheriff appointments were invalid. **Hon. Ronald W. Lowe from the 35th District Court Federal National Mortgage v. Cortney Strother Case No. 09c2299-LT; United States Bankruptcy Judge Thomas J. Tucker Antonio Attard v. Wells Fargo Bank, Case No. 08-5064; Judge Strutherland 23rd Judicial District Court PHH Mortgage Corporation d/b/a PHH Mortgage Services v. Tammie R. Cude, Case No. 09-02-2565-LT.**

8

V.    The Sheriff Deed is actually a color of title, which is an appearance of title, but which in reality is not title. **Wright v. Mattison, 18 How. (US) 50 (1855).** Color of Title means: "That which is a semblance or appearance of title, but not title in fact or in law." **Howth v. Farrar, C.C.A. Tex., 94 F. 2d. 654, 658; McCoy v. Lowrie, 42 Wash. 2d 24 Reference Black's Law sixth Ed.**

VI.    A removal has plausibility when it contains enough facts to [jurisdiction] and allows the court to draw the reasonable inference of what jurisdiction the proceeding should be held against a defendant. The relevant question is did Defendants invoke the jurisdiction of the Third Judicial Circuit Court claiming Felicia Mack is "Deputy Sheriff" as provided in the Sheriff Deed on Mortgage Sale and if not the statements made in the annexed document constitutes fraud and if the defendants did in fact invoke the Third Judicial Circuit Court's jurisdiction claiming Felicia Mack is "Deputy Sheriff" it also constitutes fraud in the Third Judicial Circuit Court records which ultimately has brought plaintiff's cause of action in the Circuit Court where defendants have now been placed in Default. All other documents of record which constitute fraud are Null and Void and with the courts careful analysis of Defendants Brief in Support of Motion to Dismiss, Exhibit 10 **Affidavit of "Deputy Sheriff"**; the Sheriff Deed on Mortgage Sale and the Appointment of Special Deputy Sheriff for Felicia Mack, the signatures of Felicia Mack does not match in either of the three documents.

VII.    As provided in plaintiff's Certified Colonial Title Search, the original note provided at closing was unendorsed and plaintiff was not provided with a history of the loan from its inception to present or who actually provided the funding for any alleged loan or promise to pay with verified proof of the transactions made and as provided in plaintiff's Certified Colonial Title Search, the alleged Mortgage and **"Note"** contains two robo-stamps which states "Pay to the Order of" "Without Recourse" Bank of America N.A, signed by alleged Michelle Sjolander and Laurie Meder as Senior Vice Presidents provided by Defendants as exhibited in defendants Brief in Support of Motion to Dismiss; Exhibit 3, was not filed in the Wayne County Register Deeds Office prior to my filing an Action to Quiet Title. Anything calculated to deceive, whether by a single act or combination, or by suppression of the truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture." **[Delahanty v. First Pennsylvania Bank, N.A., 318 Pa. Super.90, 464 A.2d 1243, 1251. Johnson v. Mc Donald, 170 Okl. 117, 39 P.2d 150.]**

VIII.    Plaintiff's attached Exhibit A and Example 1 provides that "MERS" executed both Assignment of Mortgage(s) on 5/19/09 one to Defendants Bank of America N.A. and the other to Bank of New York Mellon and these Assignments of record are speculative to the point Plaintiff has raised the question to rather the Vice President of "MERS" is none other than Ellen Coon or Kenneth Kurel or neither. "Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading." **U.S. v. Tweel, 550 F.2d 297 (1977).** The Court of Appeals does not consider assertions of error that are unsupported by convincing legal authority or argument, unless it is apparent without further research that the argument is well taken. FRAUD is a point well taken! **Lambert Supra.** Fraud committed in the procurement of jurisdiction, **Freeman Brothers Furniture v. Dept. of Revenue, 109 Ill.2d 202, 486 N.E. 2d 893 (1985).** Fraud destroys the validity of everything into which it enters. **Nudd v. Burrows.** Fraud vitiates everything. **Boyce v. Grundy.** In support of points of law that, if any tribunal (court) finds absence of proof of jurisdiction over a person and subject matter, the case must be dismissed. **Lousiville v. Motley 2111 US 149, 29S CT 42.**

IX.    Lastly, the essentials of Plaintiff's action commenced in State Court provides:

1. Status, standing, venue and all elements of subject-matter and personal jurisdiction over defendants, including compliance with substantive and procedural due process requirements, have been established by plaintiff and are present in record;

2. Facts of the case has been established in record;

3. Unless stipulated by agreement, facts have been verified by competent witnesses via testimony (affidavit, deposition or direct oral examination);

4. The law of the case affirmatively appears in record and proves application of law to stipulated or otherwise provable facts; and

5. The trial court or decision-maker, whether administrative or judicial, must render a written decision that includes findings of fact and conclusions of law. The exception to this requirement is the decision of juries in common law courts.

# ARGUMENT

I. **Plaintiff has standing to reclaim her nationality and sue and be sued under any name she chooses.**

I **Minister Damita C. Johnson El Bey** of the International Indigenous Society Cherokee Choctaw Aboriginal Nation am an Aboriginal Native American and a Citizen of the International Indigenous Society Cherokee Choctaw Aboriginal Nation which is an Indigenous Nation notified to the Federal Government and I **Minister Damita C. Johnson El Bey** make reference that Our Indigenous Plebiscite has been noticed to and confirmed by the seal of the United States Department of States (**Federal Authentication # 060131441**) [**Exhibit G**] signed by Secretary of State Condoleezza Rice and in conformity with **22 CFR 131.1 & 131.2, USC Title 4 section 42** and is protected/governed by International Law **United Nations 61/295 Declaration on the Rights of Indigenous Peoples (Article 4) – Self Autonomy Government [Exhibit H – H-8]**. We have noticed the United States Department of State, the several states, and counties of our existence which is all that is required in law, notice, and the promulgation of our plebiscite.

USC Title 18 1028 (d) 3 & 4 protects I **Minister Damita C. Johnson El Bey's** right to own Aboriginal Indigenous Government National identification and documents as the identifications belong to a State foreign to the United States. The International Indigenous Society's National Identifications and documents cannot be considered false identification per [USC Title – 18 section 1028 (d) 3, 4 [A], [B]. BODMAN LLP et al in the State/Borough of Michigan are outside of their jurisdiction to determine the affairs of a Sovereign Nation.

I **Minister Damita C. Johnson El Bey** of the International Indigenous Society Cherokee Choctaw Aboriginal Nation have official certified and authenticated documents and affidavits sealed by the State of Michigan Department of State that state in fact for the record that the United States is aware of our Nation and the treaties that apply to our status. Additionally, the opinion for **Authentication Requirements** from the U.S. DEPARTMENT OF STATE is herein referenced to their link/site, Source: http://www.state.gov/m/a/auth/c16920.htm

The Declaration of Indigenous Rights enacted by the Organization American States subjects the United States and all its Departments to ALL articles incorporated therein and any Nation that is apart by signatory and Seal of their Official Government & Representative of the **United Nations**; **Hague Convention on Private International Law** is subject to the provisions of the United Nations Declaration on the Rights of Indigenous Peoples UN 61/295; the Universal Declaration of Human Rights and UN 60/147 Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law. According to but not limited to the Charter of the United Nations, **Article 1:** the purpose of the United Nations are; to maintain international peace and security by taking effective measures for the prevention and removal of threats to the peace, and for the suppression of acts of aggression or other breaches of the peace and to bring about by peaceful means, and in conformity with the principles of justice and international law, adjustment or settlement of international disputes or situations which might lead to a breach of the peace.

According to but not limited to the Declaration on the Rights of Indigenous Peoples UN 61/295, **Article 6:** Every Indigenous individual has the right to a nationality.

According to but not limited to the Universal Declaration of Human Rights, **Article 15:** (1) everyone has the right to a nationality. (2) No one shall be arbitrarily deprived of his nationality nor denied the right to change his nationality. [**Exhibit I – I-5**]

## THE COMMON LAW RIGHT OF NAME CHANGE IS RECOGNIZED IN MICHIGAN BY ITS OWN COURT OF APPEALS:

Attorney General Frank Kelley noted: "**UNDER THE COMMON LAW A PERSON MAY ADOPT ANY NAME HE OR SHE WISHES, WITHOUT RESORT TO ANY COURT AND WITHOUT ANY LEGAL PROCEEDINGS, PROVIDED IT IS NOT DONE WITH FRAUDULENT INTENT**.... There is no requirement that any person go through the courts to establish a legal change of name.... In Michigan, as in most states, a statute authorizes procedures by which a court can, upon petition, change the name of any person **MCLA ss 711:1: MSA ss 27.3178 (561)**. Such change of name statutes does not abrogate or supersede the common law. TO THE CONTRARY, THEY AFFIRM THE COMMON LAW RIGHT AND AFFORD AN ADDITIONAL METHOD BY WHICH A NAME CHANGE MAY BE EFFECTED AS A MATTER OF PUBLIC RECORD." **Piotrowski v. Piotrowski, 71 Mich App 213, decided September 8, 1976**. The opinion was requested by Houghton County Probate Judge Reino Koivunen. **DETROIT FREE PRESS (April 23, 1980)**

One may be employed, do business, and enter into other contracts, and sue and be sued under any name they choose at will (**Lindon v. Fisrst National Bank 10 F. 894, Coppage v. Kansas 236 U.S. 1, in re McUlta 189 F. 250**). **Lindon v. First National Bank (1882), 10 F. 894**, is one of the very earliest precedent-setting federal court cases involving common law name change. ""At common law a man may change his name, and he is bound by any contract into which he may enter in his adopted or reputed name, and by his known and recognized name he may sue and be sued." This set forth many things. By common law, one may lawfully change their name and be "known and recognized" by that new name. Also, one may enter into any kinds of contracts in their new adopted name. Contracts include employment (**see Coppage v. Kansas 236 U.S. 1**). And one can be recognized legally in court in their new name. Such a change carries the exact same legal weight as a court decreed name change as long as it is not done with fraudulent intent (**In re Mculta 189 F. 250, Christianson v. King County 196 F. 791, United States v. McKay 2 F. 2d 257**). **In re McUlta, 189 F. 250 (1911)**, is one of several precedent-setting federal court rulings that clearly defined and established common law name changes as a legal right. The ruling states that even if a court is granted permission to change a name by petition and decree, that permission does "not change the common–law rule that a man may lawfully change his name at will and will be bound by any contract into which he enters under his adopted or reputed name, and that he may sue and be sued in that name". Explicitly, a common law name change carries the same legal weight as a court-decreed name change. The ruling also uses term of art "at will", clarifying that common law allows name changes "at will" and no court-issued order of name change is required.

## II. Plaintiff has standing to challenge the Defendants subject Notice of Removal from State Court under original diversity jurisdiction

Plaintiff states for the record, as provided by the Zillow printout the Lender is advertised as defendant Mortgage Electronic Registration Systems and has taken ownership of plaintiff's property through a foreclosure auction for [mortgage] the amount of $103,599 and may list it as a foreclosure property in the future. Zillow's Foreclosure Estimate predicts this property will sell for $18,177, [**Exhibit J - J-1**]. As provided by the Zillow printout the property value does not exceed the sum or value of $75,000 exclusive of interest and costs pursuant to 28 USC Sec. 1332 Diversity of citizenship; amount in controversy; costs. There is no

law that provides an amount in controversy to file an Action to Quiet Title in the 3rd Judicial Circuit Court by I Damita C. Johnson El Bey as provided by MCR 3.411; MCL 600.2982 and MCL 600.1609 the venue is proper.

Plaintiff states for the record, the amount in controversy costs for [mortgages] the U.S. District Court is $75,000, and as provided in **Case # 5:11-cv-14606** for Plaintiff Usir El Bey f.k.a. John Snead vs. [attorneys of record] Maddin Hauser Wartell Roth & Heller P.C., Dawn Yeaton for Defendants BANK OF AMERICA N.A. d.b.a. BAC HOME LOANS SERVICING, LP; BANK OF NEW YORK MELLON and Mortgage Electronic Registration Systems Inc., (MERS), in the U.S. District Court Eastern District of Michigan Southern Division and as provided an action was commenced on **September 19, 2011** against defendants and this case was dismissed for lack of standing to challenge the subject foreclosure sale; barred by the doctrine of resjudicata and for failing to state a claim upon which relief can be granted.

Plaintiff states for the record, the amount in controversy costs for [mortgages] in the 36th District Court is $25,000, and the 3rd Circuit Court handles cases involving [mortgages] over $25,000 and as provided in **Case # 11-324130-LT** for the 36th District Court [Landlord Tenant] the [attorneys of record] TROTT & TROTT P.C., Heather Dixon for Plaintiff BANK OF NEW YORK MELLON vs. Defendant Usir El Bey f.k.a. John Snead commenced an action on **September 21, 2011** with the Assignment of Mortgage provided in Examples 1-4. Please see attached **[Examples 5 (3 pgs.)]** Sheriff Deed on Mortgage Sale (alleging the auction amount $110,882.53), record number **[2011055872; Liber 49006 Page 1439]** of Wayne County Register Deeds recording dated March 01, 2011 and Wayne County Sheriff's Court Division FOIA request Denial dated May 13, 2013. **Property owner initials** *UNEB*

### III. The state court has jurisdiction Over the Proceeding.

The subject matter jurisdiction of the Third Judicial Circuit Court County of Wayne is defined by Michigan Compiled Law (MCL) § 600.1605 Venue; real actions; replevin. Here the State Court has subject matter jurisdiction over the proceeding if the claims are at least related to the state court case and any fraud and breach of contract are related to the state court proceeding because any of defendants supporting documents of claims of interest through Assignment of Mortgage and Sheriff Deed on Mortgage Sale executed **[that being the place of holding in the Circuit Court]** or any defenses of record could conceivably have an affect on defendants liabilities and this court therefore, has subject matter jurisdiction.

The proceeding contains a Notice of Removal from State Court by defendants in opposition of Plaintiff, the resolution of which will affect the distribution of and title to property. Therefore these claims are related to MCL 600.2932 Quieting Title; interest of plaintiff; action by mortgagee; establishment of title; tenancy in common; actions and MCL 600.1605 Venue; real actions; replevin. and the state court has subject matter jurisdiction over these matters.

### IV. **This Court Should Abstain From Exercising Jurisdiction Over The State Court Proceeding Pursuant to 28 USC Sec. 1447**.

However, "nothing in [1447] prevents a district court . . . from abstaining from hearing a particular proceeding . . . related to a case under State court jurisdiction. Rather this section defines the conditions under which the U.S. District Court should or must abstain from exercising jurisdiction over matters related to a case which can be remanded back to State Court pursuant to MCL 600.2932 Quieting Title; interest of plaintiff; action by mortgagee; establishment of title; tenancy in common; actions and MCL 600.1605 Venue; real actions; replevin.

Plaintiff's Motion for Remand has been timely filed; the proceeding is based upon a state law claim or cause of action; the proceeding is related to a case under State Codes but not "arising under" or "arising in" a U.S. District Court case; the case is not one that could have been brought in the U.S. District Court absent the State Court proceeding [**see 28 USC Sec. 2409a – Real property quiet title actions**]; and the suit is capable of timely being adjudicated in the State Court and since all of the foregoing requirements have been met by plaintiff's instant motion for Remand then the U.S. District Court must abstain and remand the proceeding back to state court (28 USC Sec. 1447). All claims in the State court Proceeding are based on state law causes of action. As discussed above the proceeding is related to Plaintiff's Action to Quiet Title filed pursuant to MCL 600.2932 and 600.1605 and does not arise under or in the U.S. District Court instant matter of record and all claims were brought or could have been brought in Michigan State Court independent of Plaintiff's Action to Quiet Title and that jury demands, as are present in Plaintiff's claim in the State court weigh heavily in favor of remand. And all claims brought to the U.S. District Court less than $75,000 could not have been brought in federal court and are therefore subject to mandatory abstention.

The U.S. District Court should exercise its discretion to abstain from hearing the entirety of this instant proceeding. The considerations of justice and comity weigh strongly in favor of resolving all of Plaintiff's claims in state court. Therefore this court should abstain from exercising jurisdiction over the Proceeding and remand those matters to the State Court.

## V. This Court Should Remand The Proceeding pursuant to 28 USC Sec. 1447

28 USC Sec. 1447(c) provides grounds for remand of cases for just costs and any actual expenses, including attorney fees, incurred as a result of the removal. Courts of record have held that remand is available, In other words pursuant to case law **e.g., Am. Tobacco Co., 168 F.3d at 411** ("A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to hear cases. "The party seeking removal has the burden of proving the jurisdictional and procedural requirements for removal." **Laughlin v. Prudential Ins. Co., 882 F. 2d. 187 (5th Cir. 1989)**

## VI. Plaintiff states a claim upon which remand and relief can be granted

Therefore the plaintiff's claims weigh in favor of remanding the entirety of the proceeding to the State Court pursuant to 28 USC Sec. 1447.

## Conclusion

For the reasons and authorities cited above, and with a careful analysis of any and all documents which constitute fraud or which have been executed in [that being the place of holding in the Circuit Court] by Defendants the U.S. District Court should abstain from hearing the proceeding and should remand the proceeding to the State Court pursuant to 28 USC Sec. 1447 and any other laws not mentioned in support of abstaining and remand.

"I (Minister Damita C. Johnson El Bey), declare under penalty of perjury under the dejure laws of the United States of America and of State of Michigan that the foregoing is true and correct.

_____

[Made Pursuant to the United States Constitution & Title 28 USCA Section 1746]

I Minister Damita C. Johnson El Bey of the International Indigenous Society Cherokee Choctaw Aboriginal Nation am an Aboriginal and Indigenous living being on the land and reserve all of My Indigenous rights.

*Damita C Johnson El Bey*

Authentication-Seal-Signature

### CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

State Republic _MICHIGAN_

County/Borough/Parish _WAYNE_

This document was acknowledged before me on _JUNE 20, 2013_ [Date]

_Donald F. Gay Jr._

(Signature of Officer)

My commission expires: _MARCH 10, 2020_

```
DONALD F. GAY JR.
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires March 10, 2020
Acting in the County of  WAYNE
```



15

**Certificate of Service**

I (Minister **Damita C. Johnson El Bey**) Certify that on (Date _June 20, 2013_) I served **Plaintiff's Motion to Remand Defendants Notice of Removal From State Court and Reply Brief in Support of Plaintiff's Motion to Remand In Opposition of Defendants' Motion to Dismiss and Other Filings w/attached [Exhibits A-J and Examples 1-5]** via filing with the Court Clerk in the U.S. District Court (Theodore Levin Building) for the U.S. District Court In the Eastern District of Michigan Southern Division and upon BODMAN LLC [attorneys] for [BANK OF AMERICA N.A. d.b.a. BAC HOME LOANS SERVICING, LP; THE BANK OF NEW YORK MELLON; (MERS) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., with a courtesy copy of the U.S. District Court filing of **Plaintiff's Motion to Remand Defendants Notice of Removal From State Court and Reply Brief in Support of Plaintiff's Motion to Remand In Opposition of Defendants' Motion to Dismiss and Other Filings w/attached [Exhibits A-J and Examples 1-5]** being provided to the 3rd Judicial Circuit Court of Michigan County of Wayne and other registered agents thereof via notice of electronic filing and the defendants' via Certified Mail Return Receipt Requested to:

Gerald L. Hassell CEO/President
BANK OF NEW YORK MELLON (Trustee) et al
1 Wall Street
New York, NY 10286
USPS Certified Mail # **7012 2920 0000 8137 6080**

David Trott President
TROTT & TROTT P.C. (Attorneys)
31440 Northwestern Highway Suite 200
Farmington Hills, MI 48334
USPS Certified Mail # **7012 2920 0000 8137 6097**

Brian Moynihan CEO/President
BANK OF AMERICA N.A. d.b.a. BAC HOME LOANS SERVICING, LP (Servicer) et al
100 North Tyron Street
Charlotte, NC 28255
USPS Certified Mail # **7012 2920 0000 8137 6103**

Bill Beckmann President
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. (Nominee) et al
1818 Library Street Suite 300
Reston, VA 20190
USPS Certified Mail # **7012 2920 0000 8137 6127**

Brian C. Summerfield (P57514) Attorneys for Defendants
Bridget M. Hathaway (P76409) Attorneys for Defendants
Bodman LLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
USPS Certified Mail # **7012 2920 0000 8137 6141**

Karen M. Jablonski Senior Director of Operations
BLANK ROME LLP (Attorneys)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
USPS Certified Mail # **7012 2920 0000 8137 6134**

"I certify to the fact that **Plaintiff's Motion to Remand Defendants Notice of Removal From State Court and Reply Brief in Support of Plaintiff's Motion to Remand In Opposition of Defendants' Motion to Dismiss and Other Filings w/attached [Exhibits A-J and Examples 1-5]** was served upon the above parties."

"I (Minister **Damita C. Johnson El Bey**), declare under penalty of perjury under the dejure laws of the United States of America and of State of Michigan that the foregoing is true and correct."

_Damita C Johnson el Bey_   [Made Pursuant to the United States Constitution & Title 28 USCA Section 1746]
Authentication-Seal-Signature

**CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC**

State Republic _MICHIGAN_
County/Borough/Parish _WAYNE_
This document was acknowledged before me on _June 20, 2013_ [Date]
_Donald F. Gay Jr._
(Signature of Officer)
My commission expires: _MARCH 10, 2020_

DONALD F. GAY JR.
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires March 10, 2020
Acting in the County of _WAYNE_

16



United States District Court
In The Eastern District of Michigan Southern Division

DAMITA C. JOHNSON EL BEY f.k.a.
DAMITA COLLETTE JOHNSON
    Claimant/Plaintiff
    [In Propria Persona]

        Honorable Terrence G. Berg
        Magistrate Judge Mona K. Majzoub
        Case No. 13-cv-12170

vs.
BANK OF AMERICA N.A. d.b.a. BAC HOME
LOANS SERVICING, LP; THE BANK OF NEW
YORK MELLON; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC.
    Respondents/Defendants

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND
IN OPPOSITION OF DEFENDANTS MOTION TO DISMISS AND OTHER FILINGS**

**INDEX OF EXHBITS**

| Exhibit | Description |
|---|---|
| A. | Assignment of Mortgage [Instrument Number 2010355970; Li – 48793; Pa-1046-1046] |
| B. | Sheriff Deed On Mortgage Sale by "Deputy Sheriff "Felicia Mack |
| C. | Wayne County Sheriff Court Division FOIA, Appointment of "Special" Deputy Chief Felicia Mack |
| D. | Affidavit of Notice of Rejection of Your Offer to Contract With my Counter-Offer of Contract # DCJEB-18945 |
| E. | Independent Foreclosure Review Payment |
| F. | Certified Colonial Title Search of "Note" |
| Example 1 | Assignment of Mortgage [Instrument Number 209336964; Li – 41848; Pa-798-798] |
| Example 2 | Affidavit of Recording |
| Example 3 | Better Business Exchange Certified Securitization Audit |
| Example 4 | Security Exchange Commission Pooling and Servicing Agreement Attestation |
| G. | Seal of the United States Department of States (Federal Authentication # 060131441) |
| H. | United Nations 61/295 Declaration on the Rights of Indigenous Peoples [all articles incorporated] |
| I. | Universal Declaration of Human Rights (1948) [all articles incorporated] |
| J. | Zillow's Foreclosure Estimate $18,177 |
| Example 5 | Sheriff Deed on Mortgage Sale and Wayne County Sheriff's Court Division FOIA Denial |

17

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

- In support of the points of law, three other Michigan courts have addressed the specific issue as to whether a Deputy Sheriff had been properly appointed and the following cases have ruled that the deputy sheriff appointments were invalid. **Hon. Ronald W. Lowe from the 35th District Court Federal National Mortgage v. Cortney Strother Case No. 09c2299-LT; United States Bankruptcy Judge Thomas J. Tucker Antonio Attard v. Wells Fargo Bank, Case No. 08-5064; Judge Strutherland 23rd Judicial District Court PHH Mortgage Corporation d/b/a PHH Mortgage Services v. Tammie R. Cude, Case No. 09-02-2565-LT**...................................................................**3,5,6,7,8,9,13**

- The Sheriff Deed is actually a color of title, which is an appearance of title, but which in reality is not title. **Wright v. Mattison, 18 How. (US) 50 (1855)**..............................................................................**3,5,6,7,8,9,13**

- Color of Title means: "That which is a semblance or appearance of title, but not title in fact or in law." **Howth v. Farrar, C.C.A. Tex., 94 F. 2d. 654, 658; McCoy v. Lowrie, 42 Wash. 2d 24 Reference Black's Law sixth Ed**......**3,5,6,8,9,13**

- Fraud committed in the procurement of jurisdiction, **Freeman Brothers Furniture v. Dept. of Revenue, 109 Ill.2d 202, 486 N.E.2d 893 (1985)** ...........................................................................................................................**1-20**

- Fraud destroys the validity of everything into which it enters. **Nudd v. Burrows**..................................................**1-20**

- Fraud vitiates everything. **Boyce v. Grundy**...........................................................................................................**1-20**

- [Quo Warranto] An extraordinary proceeding, prerogative in nature, addressed to preventing a continued exercise of authority unlawfully asserted. **Johnson v. Manhattan Ry. Co., N.Y., 33 S.Ct. 721, 289 U.S. 479, 77 L.Ed. 1331**........**5**

- Such change of name statutes does not abrogate or supersede the common law. TO THE CONTRARY, THEY AFFIRM THE COMMON LAW RIGHT AND AFFORD AN ADDITIONAL METHOD BY WHICH A NAME CHANGE MAY BE EFFECTED AS A MATTER OF PUBLIC RECORD." **Piotrowski v. Piotrowski, 71 Mich App 213, decided September 8, 1976**........................................................................................................................................**12**

- One may be employed, do business, and enter into other contracts, and sue and be sued under any name they choose at will (**Lindon v. Fisrst National Bank 10 F. 894, Coppage v. Kansas 236 U.S. 1, in re McUlta 189 F. 250**

- Such a change carries the exact same legal weight as a court decreed name change as long as it is not done with fraudulent intent **Christianson v. King County 196 F. 791, United States v. McKay 2 F. 2d 257**) .......................**12**

- e.g., **Am. Tobacco Co., 168 F.3d at 411** ("A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to hear cases..........................................................................**14**

- In support of points of law that, "A party lacks standing to invoke the jurisdiction of a court unless he has, in an individual or a representative capacity, some real interest in the subject matter of an action." **Wells Fargo Bank, v. Byrd, 178 Ohio App. 3d 285, 2008-Ohio-4603, 897 N.E. 2d 722 (2008)**. It went on to hold, "If plaintiff has offered no evidence that it owned the note and mortgage when the complaint was filed, it would not be entitled to judgment as a matter of law"...................................................................................................................................................**7**

- Supreme Court Case **Carpenter v. Logan in 1872** US Supreme Court precedent **Carpenter v. Logan, 83 U.S. 271, at 274**, inter alia, which states **any separation of the Note from the Deed of trust is a Nullity.** "The Note and mortgage are inseparable; the former as essential, the latter as an incident. An Assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity". When the holder of the promissory note assigns or transfers the note, the deed of trust is also transferred. **George v. Surkamp, 76S.W.2d 368, 371 (Mo. 1934)**. An assignment of the deed of trust separate from the note has no "force". Id. Effectively, the note and the deed of trust are inseparable, and when the promissory note is transferred, it vests in the transferee "all the interest, rights, powers and security conferred

by the deed of trust upon the beneficiary therein and the payee in the notes". **St. Louis Mut. Life Ins. Co. v. Walter, 46 S.W.2d 166, 170 (Mo. 1931)**.................................................................................................................7

- MERS does not have standing as a real party in interest under the Rules to file a motion... The declaration also failed to assert that MERS, FMC Capital LLC or Homecomings Financial LLC held the Note. **Mortgage Electronic Registration Systems, Inc. v. Chong, 824 N.Y.S.2d 764 (2006)**..............................................................7,12,13

- "Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading." ***U.S. v. Tweel*, 550 F.2d 297 (1977)**............................................9

- **Lousiville v. Motley 2111 US 149, 29S CT 42**...................................................................................9

- Anything calculated to deceive, whether by a single act or combination, or by suppression of the truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture." **Delahanty v. First Pennsylvania Bank, N.A., 318 Pa. Super.90, 464 A.2d 1243, 1251. Johnson v. Mc Donald, 170 Okl. 117, 39 P.2d 150**.......................................................................................................................9

- "The party seeking removal has the burden of proving the jurisdictional and procedural requirements for removal." **Laughlin v. Prudential Ins. Co., 882 F. 2d. 187 (5ᵗʰ Cir. 1989)**......................................................14

## Statutes

- Michigan Compiled Law (MCL) 445.1633 **Compliance with state and federal laws**...........................................3

- Statutory requirement [sheriffs] must follow pursuant to the governing statute **MCL § 600.3216**, which sets forth the requirements for the foreclosure of mortgages in the State of Michigan. Said statute further specifies who must conduct the sale.............................................................................................................3,5,6,7,8,9,13

- The deed is unequivocally improper, and therefore plainly violates the statute **MCL § 600.3216**, as defective, and should therefore be set aside and cancelled as void, said statute is clear the sale shall be made by the person appointed for that purpose in the mortgage, or by three individuals the sheriff, undersheriff, or a deputy sheriff of the county who are authorized to conduct a sale, none of the authorized individuals signed the sheriff deed....3,5,6,7,8,9,13

- It is essential to note that **MCL § 51.70** was first enacted in 1846 whereby the power to appoint a **special** deputy sheriff is derived from this statute. **MCL § 51.70 Deputy Sheriffs; appointment; revocation; special deputies; responsibility for acts, defaults, misconduct; and bond**............................................3,5,6,7,8,9,13

- **MCL 600.2932** Quieting Title; interest of plaintiff; action by mortgagee; establishment of title; tenancy in common; actions...........................................................................................................3,6,12,13

- **MCL 600.1605** Venue; real actions; replevin...........................................................................3,6,12,13

- There is no requirement that any person go through the courts to establish a legal change of name.... In Michigan, as in most states, a statute authorizes procedures by which a court can, upon petition, change the name of any person **MCLA ss 711:1: MSA ss 27.3178 (561)**.......................................................................................12

- **28 USC Sec. 1447** Procedure after removal generally.....................................................4,7,8,13,14

- **22 CFR 131.1**.................................................................................................................11

- **22 CFR 131.2**...................................................................................................................**11**
- **4 USC section 42**...............................................................................................................**11**
- 18 USC section 1028 (d) 3, 4 [A], [B]..................................................................................11
- 28 USC Sec. 2409a – Real property quiet title actions......................................................**14**
- 28 USCA section 1746.......................................................................................................**14,15**

## Michigan Rules of Civil Procedure

- MCR 3.411 Civil Action to Determine Interest in Land.............................................................**3**

## Federal Rules of Civil Procedure

- Fed. R. Civ. P. 81(a)4 **[Quo Warranto]**...............................................................................**5**

## United Nations Conventions

- United Nations Charter.........................................................................................................**11**
- Declaration of Indigenous Rights enacted by the Organization American States.....................**11**
- United Nations Declaration on the Rights of Indigenous Peoples UN 61/295.........................**11**
- United Nations Universal Declaration of Human Rights (1948) .........................................**11,12**
- United Nations Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law UN 60/147
  ...............................................................................................................................................**11**

## Other Authorities

- Court of Appeals does not consider assertions of error that are unsupported by convincing legal authority or argument, unless it is apparent without further research that the argument is well taken. FRAUD is a point well taken! *Lambert Supra*..........................................................................................................................**9**

*Exhibit A*

## RIDER "B"
## SEARCH OF TITLE

From examination of the records in the Register of Deeds Office, Wayne County, Michigan, up to February 4, 2013 at 8:00am.

**PROPERTY DESCRIPTION:**

Land Situated in the City of Detroit, County of Wayne and State of Michigan described as follows:

The North 18 feet of Lot 91 and the South 22 feet of Lot 92 - C.W. Harrah's Redford Subdivision, as recorded in Liber 57, Page 80 of Plats, Wayne County Records.

Commonly Known As:  18945 Fielding St., Detroit, MI 48219

Tax ID Number: WARD: 22 - ITEM: 102910

**Apparent Owner:**    Damita C. Johnson
Title deed dated 06/15/99 and recorded 07/14/99 in Liber 30245, Page 7322, Wayne County Records.

2011 and prior taxes are paid.
2012 Summer taxes are PAID $1,335.62
2012 Winter taxes are PAID $151.05
SPECIAL ASSESSMENTS:  NONE SHOWN ON WEBSITE
Tax amounts as shown are base amounts only and do not include any penalty or interest.

Sheriff's Deed dated, 11/01/12, recorded 11/16/12, in Liber 50301, Page 524, which was given upon foreclosure of the mortgage recorded 05/28/08, in Liber 47263, Page 1063, and assigned to BAC Home Loans Servicing, L.P., in assignment recorded in Liber 48793, page 1046, Wayne County Records. SAID RIGHT TO REDEEM TO EXPIRE SIX MONTHS FROM THE DATE THEREOF, 05/01/13.

Mortgage in the original amount of $13,645.00, executed by Damita C. Johnson, unmarried, to Hansons Madison Heights, dated 05/31/08, recorded 07/18/08, in Liber 47374, Page 408, and assigned to FCC Investment Trust I in Liber 47419, Page 1185, Wayne County Records.

Interest of Let Me Help U Irrevocable Trust as evidenced by a Revised Grant deed dated 08/17/10 and recorded 11/03/10 in Liber 48824, Page 1299, Wayne County Records.  NOTE:  The Grantor(s) on said deed did not have a recorded interest in subject property at the time the deed was done.

Under this form of Search, this Company is not an insurer of the above Title, nor does it guarantee the Title or any evidence thereto and is not liable for any inaccuracies involving environmental searches or determinations.

The liability is limited to the amount paid for the Search.  Rider attached to and forming a part of Search No. 19189

**Colonial Title Company**
**Raymond DeBates, President**

Search (Exception 31)

19189

A1

## COLONIAL TITLE COMPANY
### SEARCH REPORT

Record Search Furnished to:   Damita Johnson
18945 Fielding
Detroit, MI 48219

Customer Reference Number:

This search consists of entries recorded with the Office of the Register of Deeds, based upon legal description herein.

This is not a Title Insurance Policy, and should not be relied upon as such.  THIS IS NOT AN "ENVIRONMENTAL SEARCH".

In consideration of the issuance of this search, it is agreed that Colonial Title Company, shall not be liable for any loss of damage arising from incorrectness or incompleteness of this search unless such incorrectness or incompleteness is the result of the intentional omission or misdescription by the Company, with the formed intent of harming the applicant of the search.  In no event, as evidenced by the charge for this search, does Colonial Title Company undertake any liability arising from:

1.  Consequential or punitive damages, loss of anticipated profits, costs of toxic waste cleanup or other loss so related;

2.  Any type of loss which would result from the accuracy of a determination that any street address given and legal description searched constitute the same premises;

3.  Any instrument (however designated) filed in the Office of the Register of Deeds pursuant to the Uniform Commercial Code P.A. 1962, No. 174, effective January 1, 1964; and/or

4.  Any records of the Circuit, Probate or other Courts nor any records other than the records in the Office of the Register of Deeds.

Covering property described as:  18945 Fielding St., Detroit, MI 48219

We have searched the records in the Office of the Register of Deeds for Wayne County and find no conveyances describing said property in said office from said beginning date to February 4, 2013 at 8:00am.

See attached Rider "B"

Colonial Title Company
Raymond DeBates, President

Search (Exception 31)                                                                 19189

Bernard J. Youngblood
Wayne County Register of Deeds
October 15, 2010 09:31 AM
Liber 48793 Page 1046-1046
#2010355970  PSG  FEE: $15.00

## ASSIGNMENT OF MORTGAGE

Johnson, Damita C                                    T&T # 346032F01

KNOW ALL MEN BY THESE PRESENTS, that Mortgage Electronic Registration Systems, Inc as nominee for Lender and Lenders successors and/or assigns, 1818 Library Street, Suite 300, Reston, VA 20190, party of the first part, for and in consideration of the sum of One Dollar ($1.00) and other valuable considerations, lawful money of the United States of America, to it paid by: BAC Home Loans Servicing, L.P., 400 Countrywide Way, Simi Valley, CA 93065-6298, party of the second part, the receipt whereof is hereby acknowledged, has sold, assigned and transferred, and does hereby sell, assign and transfer to the said party of the second part, all the right, title and interest of the said party of the first part in and to a certain real estate mortgage made by Damita C. Johnson, A Single Woman, original mortgagor(s). to Mortgage Electronic Registration Systems, Inc., as nominee for lender and lender's successors and/or assigns, Mortgagee, dated May 2, 2008, and recorded on May 28, 2008 in Liber 47263 on Page 1063, in Wayne county records, Michigan

IN WITNESS WHEREOF, said party of the first part has caused these presents to be signed by its duly authorized officers and its corporate seal to be hereunto affixed, this 1st day of October, 2010.

In the presence of:                    Signed:

_____              Mortgage Electronic Registration Systems, Inc as nominee for Lender and Lenders successors and/or assigns

_____              By _____
                                     Ellen L. Coon, Vice President, for Mortgage Electronic
                                     Registration Systems, Inc., pursuant to Agreement for Signing
                                     Authority dated 05/19/2009

STATE OF MICHIGAN        )
                         )SS.
COUNTY OF OAKLAND        )

This instrument was acknowledged before me in Oakland County, State of Michigan, on this 1st day of October, 2010, by Ellen L. Coon, Vice President, for Mortgage Electronic Registration Systems, Inc., pursuant to Agreement for Signing Authority dated 05/19/2009, for the corporation.

_____
Michael G. Voss, Notary public
State of Michigan, County of Wayne
My commission expires January 9, 2017
Acting in the County of Oakland

| When Recorded Return To:<br>Trott & Trott, P.C.<br>31440 Northwestern Highway, Suite 200<br>Farmington Hills, MI 48334-2525 | | Drafted by: Marcy J. Ford<br>Trott & Trott, P.C.<br>31440 Northwestern Highway, Suite 200<br>Farmington Hills, MI 48334-2525 |

City of Detroit:
Legal Description:
The North 18 Feet of Lot 91 and the South 22 Feet of Lot 92, C.W. Harrah's Redford Subdivision, as Recorded in Liber 57, Page 80 of Plats, Wayne County Records.

Tax Parcel No. 22 /102910

Property Address
18945 Fielding St
Detroit, MI 48219-2511

*Exhibit B*

FILE DO NOT MAIL

2012 NOV 16 PM 2:13

Bernard J. Youngblood
Wayne County Register of Deeds
November 16, 2012  02:13 PM
Inst:2012459872  SHD  Pages:8
Liber:50301  Page:524

346032F01 Johnson - FC X

## SHERIFF'S DEED ON MORTGAGE SALE

This Indenture Made this 1st day of November, A.D. 2012, between,   **Felicia Mack**   , a Deputy Sheriff in and for Wayne County, Michigan, whose address is 4747 Woodward Ave Detroit, Michigan 48201-1307 , party of the first part, and Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, L.P., whose address is 5401 N Beach St Stop FWTX-828, Fort Worth, TX 76137-2733 , party of the second part (hereinafter called the grantee).

WITNESSETH, That Whereas a certain mortgage made by Damita C. Johnson, A Single Woman, original mortgagor(s), to Mortgage Electronic Registration Systems, Inc., as nominee for lender and lender's successors and/or assigns, Mortgagee, dated May 2, 2008, and recorded on May 28, 2008 in Liber 47263 on Page 1063, and assigned by said Mortgagee to BAC Home Loans Servicing, L.P. as assignee as documented by an assignment dated October 1, 2010 recorded on October 15, 2010 in Liber 48793 on Page 1046, in Wayne county records, Michigan (said mortgage secured an FHA loan insured by the US Department of Housing and Urban Development ("HUD")), and

WHEREAS, said mortgage contained a power of sale which has become operative by reason of a default in the condition of said mortgage, and

WHEREAS, no suit or proceedings at law or in equity have been instituted to recover the debt secured by said mortgage or any part thereof, and

WHEREAS, by virtue of said power of sale, and pursuant to the statute of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in said mortgage, that the said premises, or some part of them, would be sold at 1:00 PM on the 29th day of December, A.D. 2010 (sale adjourned from December 29, 2010 to November 1, 2012), at public vendue, that being the place of holding the Circuit Court for Wayne County where the premises are situated and

WHEREAS, pursuant to said notice I did, at on the day last aforesaid, expose for sale at public vendue the said lands and tenements hereinafter described, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of One Hundred Three Thousand Five Hundred Ninety-Nine and 09/100 Dollars ($103,599.09), that being the highest bid therefore and the grantee being the highest bidder, and

WHEREAS, said lands and tenements are situated in the City of Detroit, Wayne County, Michigan, more particularly described in exhibit A, attached and commonly known as:
18945 Fielding St
Property Tax Parcel ID 22/102910
This property may be located within the vicinity of farmland or a farm operation. Generally, accepted agricultural and management practices, which may generate noise, dust, odors, and other associated conditions, may be used and are protected by the Michigan right to farm act.

Now, this Indenture Witnesseth, That I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain and sell unto the grantee, its successors and assigns, forever, all the estate, right, title and interest, which the said Mortgagor(s) had in said land and tenements and every part thereof, on the 2nd day of May A.D. 2008, that being the date of said mortgage, or at any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoof forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could or ought to sell the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the date and year first above written.

**Felicia Mack**

Deputy Sheriff in and for the County of Wayne

STATE OF MICHIGAN
COUNTY OF WAYNE

On this 1st day of November, A.D. 2012, before me, a Notary Public in and for said County of Wayne came **Felicia Mack**   , a Deputy Sheriff of said County, known to me to be the individual described in and who executed the above conveyance, and who acknowledged that she/he executed the same to be her/his free act and deed as such Deputy Sheriff.

Notary Public, Wayne County, Michigan
My commission expires:
Acting in the county of Wayne

THIS INSTRUMENT IS EXEMPT FROM MICHIGAN TRANSFER TAX UNDER MCLA 207.505(c); MCLA 207.526(v); MCLA 207.505(h)(ii).

HUD #2619438672703

Laura Oyament
Notary Public
Appointed in Macomb County
Acting in Wayne County
Appointment Expires on 11/19/2014





Benny N. Napoleon
*Wayne County Sheriff*

April 23, 2013

Damita Johnson
18945 Fielding
Detroit, MI 48219

> **RE:** **Freedom of Information Act Request (F.O.I.A.) of April 18,
> 2013, requesting records relating to Felicia Mack.**

Dear Ms. Johnson:

The Freedom of Information Office of the Wayne County Sheriff's Office has
received and reviewed your request and is being provided at no cost. Your
request is granted in part and denied in part.

Your request is denied under MCL 15.243(1)(a) to the extent that the records
contain personal or confidential information, e.g., employee identification number.

You have the right to do either of the following:

1.) Submit a written appeal to the County Executive, which specifically
States the word "appeal" and states the reason or reasons the
denial should be reversed.

**OR**

2.) Commence an action in the Circuit Court to compel disclosure.
Should you prevail, you will be entitled to have reasonable
attorney's fees, costs and disbursements assessed against the
County by the court. If you or the County prevails in part, the court
may in its discretion, award you all or an appropriate portion of
reasonable attorneys' fees, costs and disbursements. If the court
determines that the County has been arbitrary and capricious in its

WAYNE COUNTY SHERIFF'S COURT DIVISION
2 WOODWARD RM 1711 • DETROIT, MI 48226 •
(313) 224-2260 PH (313)224-2433 FAX

<u>Benny N. Napoleon</u>
Wayne County Sheriff



<u>Office of The Sheriff</u>

## APPOINTMENT OF SPECIAL DEPUTY SHERIFF

TO WHOM THESE PRESENT MAY COME:  GREETINGS

By virtue of the power vested in me by the statute, in such case made and provided, I, Benny N. Napoleon, Sheriff of the County of Wayne, do hereby appoint:

# FELICIA MACK

SPECIAL DEPUTY SHERIFF during the term ending December 31, **2016** to do particular acts and limited to the following, to wit: **FELICIA MACK** to act as auctioneer to hold all Sheriff's sales, issue deeds; adjourn Sheriff's sales and perform related work; levy on real estate by virtue of Writs of Execution, Writs of Attachment, Court Orders; record said levies; release said levies; file and endorse Returns of Writs of Execution, Attachment, Court Orders; advertise real estate for sale and perform other related work.

BENNY N. NAPOLEON
SHERIFF OF WAYNE COUNTY

## OATH OF SPECIAL DEPUTY SHERIFF

STATE OF MICHIGAN
COUNTY OF WAYNE

I, FELICIA MACK, do solemnly swear that I will support the Constitution of the United States, the Constitution of Michigan, and the Charter for the County of Wayne.  I will faithfully discharge the duties of Special Deputy Sheriff in and for the County of Wayne, State of Michigan, to the best of my ability, so help me God.

Felicia Mack

Print FELICIA MACK

SIGNATURE

Employee ID #

OLIVIA TOWNSEND
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires December 20, 2017

Subscribed and sworn to before me
this 19 of April, A.D., 2013.

Notary Public, Wayne County, Michigan
My Commission Expires: 12 20 2017

Page 2
Letter To:  Damita Johnson
Re:  Felicia Mack

denial, you will be entitled to, in addition to actual damages, punitive damages in the amount of $500.00.

Sincerely,                                              Denial approved:

James E. Spivey, P44484                    John Knappmann
Deputy Chief                                       Assistant Corporation Counsel
Wayne County Sheriff Office                 Office of Corporation Counsel
                                                         Date: _____

JS:JK

cdg

cc: Valerie Denha
    File 13-206

Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract,
With my Counter-Offer of Contract # DCJEB-18945
Certified Mail # 7012 2920 0000 8137 6844

## Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract
## With my Counter-Offer of Contract # DCJEB-18945

"Indeed, no more than such (affidavits) is necessary to make the prima facie case." **United States v. Kis, 658 F.2d, 526 (7th Cir. 1981)**

Commercial Notice for: all Agents [attorneys] of record for Defendants BANK OF AMERICA N.A. d.b.a. BAC HOME LOANS SERVICING, LP; THE BANK OF NEW YORK MELLON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., specifically but not limited to:

Brian C. Summerfield (P57514) Attorneys for Defendants
Bridget M. Hathaway (P76409) Attorneys for Defendants
BODMAN LLP
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
USPS Certified Mail # 7012 2920 0000 8137 6844

**The following "Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract With my Counter-Offer of Contract" is made explicitly under reservation of rights and without recourse, and I hereby and herein have <u>claimed</u> my LIBERTY to common law, ancestral treaties and private international law jurisdictions and <u>refuse</u> statutory jurisdiction and/or color of law procedural jurisdiction encumberment.**

In the matter of: Case # 13-004987—CH and your dunning offer electronically filed in the form of an Offer to Contract dated May 15, 2013 in the Third Judicial Circuit Court of Michigan and delivered to mailing location: c/o Damita C. Johnson El Bey 18945 Fielding Detroit, Michigan [48219].

I hereby duly notice Defendants BANK OF AMERICA N.A. d.b.a. BAC HOME LOANS SERVICING, LP; THE BANK OF NEW YORK MELLON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., **co-parties and representatives** and all Agents [attorneys] of record and through you Brian C. Summerfield BODMAN LLC ET AL d/b/a, Third Party Agents, of my instrument entitled, **"Commercial Notice by Affidavit of Rejection of Your Offer to Contract with my Counter-Offer of Contract"**, concerning Defendants BANK OF AMERICA N.A. d.b.a. BAC HOME LOANS SERVICING, LP; THE BANK OF NEW YORK MELLON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., **co-parties and** representatives offer of contract, dated May 15, 2013.

1. I am hereby and herein duly rejecting, objecting to your offer in the Notice of Removal From State Court and trespass against my Action to Quiet Title filed in Third Judicial Circuit Court of Michigan Case No. 13-004987—CH and any further usage thereof, and I am filing the attached Motion to Strike your Notice of Removal from the court records because: (1) I don't have and have never had any Contract with this company BODMAN LLC or your agents. (2) Let me make this clear to you, I have never done commerce and or business with anyone for this corporation BODMAN LLC et al. (2) <u>Show me the contract that you allege that I have with you or them, concerning this alleged offer to enter my commercial affairs, that you are referencing</u>, (3) I do not understand your intent or what you're trying to say because of lack of verified complaint of you or your secured interest, (4) your offer of contract Notice of Removal was <u>not</u> signed under penalty of perjury, as mandated by the public laws throughout my evidence submitted, and (5) <u>you have committed barratry by your signature by asserting false and fraudulent defenses</u> so that courts of fiction may rely upon these files as being undisputable evidence (Barratry - Vexatious incitement to litigation by soliciting potential legal clients and practice of law and this places litigants in double jeopardy a hundred times over, where cases can be lost by technicalities not by a jury) to deprive plaintiff of property and remedy and as provided in Plaintiff's Action to Quiet Title First Cause of Action (under paragraph 7); any defenses of defendant(s) TO PERSUADE THE COURTS TO VIOLATE MY PROTECTED CONSTITUTIONAL RIGHTS would be arguments asserted against my inherent rights and that the facts, testimony and evidence presented is inadmissible and those defenses would be in sheer avoidance of the laws and testimony whereby a jury as demanded gets to hear all the facts and truth that are admissible., [*a void judgment is not void when it is declared void but is void from inception*. A void judgment is not a void judgment when ruled void by the court; a void judgment is void ab



Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract,
With my Counter-Offer of Contract # DCJEB-18945
Certified Mail # 7012 2920 0000 8137 6844

initio (from the beginning). **See Patton v. Diemer "1988", 35 Ohio St. 3d 68, 518 N.E. 2d 941**]. (6) This looks to me like an attempt to persuade the courts to violate my protected constitutional rights and to enter my commercial affairs and trespass on my liberties that are protected by Treaties and positive law.

2.  You and all attorneys of record are third-party agents who does <u>not</u> have first-hand, personal knowledge of the truth. I do <u>not</u> deal with third-party agents.

3.  I cannot make a legal determination as to what you are demanding and what your intent is, and <u>I do not give you permission to make a legal determination for me</u>, so please take Judicial Notice of the Counter offer of Contract # DCJEB-18945, by affiant.

4.  I cannot agree to something that I don't understand. I don't understand your authority to my private property, or my Action to Quiet Title filed in Third Judicial Circuit Court of Michigan Case No. 13-004987—CH and therefore, I do <u>not</u> consent or assent to any further practices of law without a more definite verified complaint of your secured interest, and I have objected to accept your alleged offer to contract via the attached Motion to Strike.

5.  **Defendants'** Brian C. Summerfield (P57514) ET AL d/b/a, Third Party Agents, if your offer of contract [Notice of Removal From State Court] is an attempt to refute my "Action to Quiet Title filed in Third Judicial Circuit Court of Michigan Case No. 13-004987—CH," then all subsequent contracts attempted to be made afterwards are null and void and or an intentional trespass without verified proof of claim and or proof of loss.. Public Notice is now given and all who fail to refute each and every point using only facts based on first-hand, personal knowledge in written, uncontroverted, counter-affidavit form, and to sign a Real party name, in wet ink signature under penalty of perjury, before a Public Notary, you will be added to a forth coming tort.

7.  You are a third party agent who is trespassing into a private matter; private contract that you know is unassailable by using your procedural semantics and Brian C. Summerfield (P57514) for any such attempts to contact Plaintiff after receipt of this **"Commercial Notice by Affidavit of Rejection of Your Offer to Contract with my Counter-Offer of Contract"** I will then attach you to the claim as a defendant and joint tort feasor for "INTENTIONAL TORTS" which illustrates any private or civil wrongs resulting from intentional acts on the part of the tort feasors and/or joint tort feasors, for injury by slander and libel, intentional infliction of emotional distress, for committing trespass, fraud and wrongful conversion. This Intentional Tort is enforceable by all lawful means and is agreed that if Brian C. Summerfield (P57514) BODMAN LLC ET AL d/b/a, Third Party Agents attempts to commit further injury by trespass upon me, under color of law, without lawful order and verified assessment, will cause attachment of this Intentional Tort and any continued proceeding in trespass shows acceptance of this Contract and provides Evidence of your intent to implement the terms Intentional Tort and/or Neglect. Again, I do <u>not</u> deal with third-parties or with their agents and any other dunning offers will be returned and requested to be stricken from the record pursuant to civil procedure.

8.  Let me, Damita C. Johnson El Bey, affiant to said rejection of offer make this clear to you I do not wish to contract with you under any agreement that you have made up out of thin air, made in bad faith and with unclean hands allegedly trying to get an interest in my commercial affairs. I hope you are not trying to deceive me into believing that there exists any contract, from an alleged agreement, not given to me for viewing and consent, and that you are making up out of thin air an offer that should not and does not exist. It looks like you are trying to get an interest in my commercial affairs with this fake opportunity to contract, obviously being created by you as a third party Agent for Defendants' "BANK OF AMERICA N.A. d.b.a. BAC HOME LOANS SERVICING, LP; THE BANK OF NEW YORK MELLON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC," out of thin air or by any other corporations, or municipality (Federal or State or County). Beware all trespassers will be prosecuted under State, Federal and International law.

9.  Let me, Damita C. Johnson El Bey, affiant to said rejection of offer make this clear to you, please take Judicial Notice of the Action to Quiet Title and Exhibits of record, whereas I, Me, My, and my heirs and assigns forever, do not in any way ever waive any of our inalienable rights and liberties to my commercial affairs ever. Again, let me make this clear to you and let it be known that you and all your co-parties rather corporate/municipal/ personal/and in your private capacity as well, all will be sued in a International or Federal Court for various torts, constitutional and treaty violations which are not limited to your offer, if you continue down this path of

Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract,
With my Counter-Offer of Contract # DCJEB-18945
Certified Mail # 7012 2920 0000 8137 6844

dishonor by trying to persuade the court to let you create an interest in the private commercial affairs of Damita C. Johnson El Bey.

10.  Please TAKE JUDICIAL NOTICE as provided in Plaintiff's Action to Quiet Title Mandatory Judicial Notice.

- In support of the points of law that, **PURSUANT TO THE JUDICIAL CODE OF CONDUCT OF THIS STATE:** According to CANON 2 of the Michigan Judicial Code of Conduct it is unlawful for a judge to have impropriety. As enunciated in **Caperton v Massey, ____US____; 129 S Ct 2252; 173 L Ed 2d 1208 (2009),** A judge can have, based on objective and reasonable perceptions, either (i) a serious risk of actual bias impacting the due process rights of a party or (ii) has failed to adhere to the appearance of impropriety standard set forth in the **Michigan Code of Judicial Conduct Canon 2. A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities.**
- <u>28 U.S.C. § 454. Practice of law by justices and judges:</u> Any Justice or judge appointed under the authority of the United States who engages in the practice of law is guilty of a high misdemeanor. (June 25, 1948, c. 646, 62 Stat. 908).
- **PURSUANT TO THE JUDICIAL CODE OF CONDUCT OF THIS STATE:** According to **CANON 4** of the Michigan Judicial Code of Conduct it is unlawful for a judge to practice law. **CANON 5** states "A **JUDGE SHOULD REGULATE EXTRA-JUDICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH JUDICIAL DUTIES."** (F) Practice of law. Judges should not practice law.

12.  Please TAKE JUDICIAL NOTICE as provided in Plaintiff's Action to Quiet Title Mandatory Judicial Notice.

- The practice of Law CANNOT be licensed by any state/State. **[U.S. Supreme Court]: Schware v. Board of Examiners, 353 U.S. 238, 239**
- The practice of Law is AN OCCUPATION OF COMMON RIGHT. **[U.S. Supreme Court]: Sims v. Aherns, 27 S.W. 720 (1925)**
- The State is prohibited from violating substantive rights as a matter of law. **Owens v. City, 445 US 662 (1980)**

11.  Please TAKE JUDICIAL NOTICE as provided in Plaintiff's Action to Quiet Title First Cause of Action (under paragraphs 1, 7, 8); The State is prohibited from violating substantive rights as a matter of law **Owens v. City, 445 US 662 (1980)** and Plaintiff believes and thereon alleges that, at all times herein mentioned, each of the defendants et al sued herein will be attempting to defraud the courts of the United States of America by asserting defendants' and all attorney(s) of record are duly licensed to practice law and are in compliance with the statutory requirements of their respective offices of public trust, they are not to be implied as being licensed or as a state of being licensed to practice law.

- In support of the points of law, Though the State shall not interfere if an individual desires to conduct his own legal affairs without the aid of counsel, the public interest demands that no person hold himself out to the public as qualified to render legal services for others unless he in fact is so qualified. **Bump v. District Court of Polk County, 232 Iowa 623 (5NW2d 914).**
- In Support of the points of law that, not only court appearances, but also out-of-court conduct may be prohibited pursuant to unauthorized practice of laws and rules. **State Bar of Michigan v. Cramer**; where a corporation and an individual, who was not licensed as an attorney, in operating collection agencies, took assignments of claims from their customers and brought suits on the assigned claims, in which the customers retained an interest, the corporation and individual were engaging in the unauthorized practice of law. See also relevant Michigan statutes **Michigan Compiled Law 450.681 Practice of law by Corporations and Voluntary Associations Prohibited; Exceptions; Penalty. Michigan Compiled Law 600.916 Unauthorized practice of law [Exhibit A- A-1]**
- In support of the points of law that, "The general rule is that an unconstitutional act of the Legislature protects no one. It is said that all persons are presumed to know the law, meaning that ignorance of the law excuses no one; if any person acts under an unconstitutional statute, he does so at his own peril and must take the consequences." <u>16 Am Jur 2d §178</u>
- In support of points of law that statements of counsel in brief or in argument would not be facts before the courts and may not be relied on in the court's rulings and determinations; this finding of a continuing investigation, which forms the foundation of the majority opinion, comes from statements of counsel made

Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract,
With my Counter-Offer of Contract # DCJEB-18945
Certified Mail # 7012 2920 0000 8137 6844

during the appellate process. As we have said of other un-sworn statements which were not part of the record and therefore could not have been considered by the trial court; "Manifestly, (such statements) cannot be properly considered by us in the disposition of a case." **UNITED STATES v. LOVASCO "06-09/77" 431 U.S. 783, 97S. Ct. 2044, 52L. Ed. 2d 752.**

12. Please TAKE JUDICIAL NOTICE as provided in Plaintiff's Action to Quiet Title Second Cause of Action (under paragraph 17).

   - In support of points of law that, In determining whether the plaintiff come before this Court with clean hands, the primary factor to be considered is whether the plaintiffs sought to mislead or deceive the other party, not whether that party relied upon plaintiffs' misrepresentations. **Stachnik v. Winkel, 394 Mich. 375, 387; 230 N.W.2d 529, 534 (1975).**
   - In support of points of law that, "A party lacks standing to invoke the jurisdiction of a court unless he has, in an individual or a representative capacity, some real interest in the subject matter of the action." **Lebanon Correctional Institution v. Court of Common Pleas 35 Ohio St. 2d 176 (1973).**

13. Brian C. Summerfield (P57514) BODMAN LLC ET AL d/b/a, Third Party Agents and all other Third Party Agents for **Defendants' co-parties and representatives , I hereby after receipt of this "Commercial Notice by Affidavit of Rejection of Your Offer to Contract with my Counter-Offer of Contract" accept your open and binding offer of contract to form a firm and binding, private, bilateral contract between you and me, in which you agree to perform all of your promises, and uphold all of my rights and liberties. If you presume yourself or assume to be Representing me, you, and/or your assigns, are hereby fired.**

   **Please Take Judicial Notice** that the foregoing "**Commercial Notice by Affidavit of Rejection of Your Offer to Contract with my Counter-Offer of Contract**" is an instrument in commerce, STATUTE STAPLE, CONFIRMATORY WRITING and that I, Damita C. Johnson El Bey, Affiant, do hereby and herein explicitly reserve all of my rights and liberties without recourse. Your failure to respond, nihil dicit, within three (3) business days of receipt establishes your unconditional acceptance of the foregoing violations and any continued proceeding in trespass shows your acceptance of this Contract and provides Evidence of the intentional tort claim that I will bring against Defendants' and all third party agents [attorneys] of record in this instant matter herein, if you don't stop immediately. I wish you well in your endeavor of choice to Practice Law (Honorable or dishonorable) and on how you are going to do commerce with me; I pray that you are Honorable/Truthful/Peaceful/Lawful/Loving and Just in your future endeavors to do commerce with me.

   **Please Take Judicial Notice** that I, Damita C. Johnson El Bey, Affiant do disclaim, and make void ab initio the signature on any and all contracts, agreements, forms, or any instrument which may be construed in any way to give any agency or department of any federal or state government authority, venue, or jurisdiction over me and all unauthorized use thereof of any of my private property and liberties with All rights reserved, and make void ab initio all assumed powers of attorney, in fact, in presumption, or otherwise, **not authorized by me** or anyone else, claiming to act on my behalf, **without my consent**, as it pertains to me or any of my private property, contracts and liberties, and all will be sued but not limited to, any and all quasi/colorable, public, governmental entities, municipalities or corporations that don't protect my inalienable rights on the grounds of constructive fraud, concealment, non-disclosure of pertinent facts and for injury by slander and libel, intentional infliction of emotional distress, for committing trespass, fraud and wrongful conversion.

   I, Damita C. Johnson El Bey, affirm that all of the foregoing is true and correct. I affirm that I am of lawful age and am competent to make this Affidavit. I hereby affix my own Common Law Seal to all of the affirmations in this entire document with explicit reservation of all my inalienable rights and my specific common law right not to be bound by any contract or obligation which I have not entered into knowingly, willingly, voluntarily, free of misrepresentation, duress, or coercion.

Made Pursuant to the Constitution for the United States of America and positive law at
Title 28 USCA Section 1746

Commercial Notice by Affidavit of Notice of Rejection of Your Offer to Contract,
With my Counter-Offer of Contract # DCJEB-18945
Certified Mail # 7012 2920 0000 8137 6844

And further deponent saith not. I, Damita C. Johnson El Bey, now affix my official Common Law Seal to all of the above affirmations with Explicit Reservation of ALL Natural Aboriginal Indigenous & Inalienable Birthrights, Waiving None,

*Damita C. Johnson El Bey*

Damita C. Johnson El Bey, Affiant

Affirmed, subscribed and sealed on this **17**th day of **MAY** 2013.

PLEASE BE ADVISED NO PROCEEDING OF ANY KIND SHALL BE ENACTED OR IMPLEMENTED PRIOR TO THE ESTABLISHMENT OF LAWFUL JURISDICTION FOR A NON-CITIZEN U.S. NATIONAL BASED ON AN ARTIFICE, ORIGINAL, AND FILE COPY(S) OF THIS NOTIFICATION, WITH FEDERAL PROOF OF RECEIVERSHIP HAS BEEN RECORDED, AND ANY CLAIMS WILL BE SUBSTANTIATED WITH AN AVERMENT OF JURISDICTION BASED ON THE PROCLAMATIONS AND/OR DECLARATIONS PRESENTLY IN YOUR POSSESSION, IN ORDER TO IMPLICATE ANY NONCOMFORMITY TO IMMUNITY(IES) IN LEGAL FORCE BY NATIONAL AND PRIVATE INTERNATIONAL LAW.

NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL AND
NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT

### ACKNOWLEDGMENT

On this **17** day of **MAY**, 2013, before me, the undersigned, a Notary Public in and for Michigan State, Affiant Damita C. Johnson El Bey, personally appeared and the above- Common Law Seal, is known to me to be the one whose name is sealed on this instrument, and has acknowledged to me that he has executed the same.

State of Michigan      )
                       )      solemnly affirming and subscribing
County of Wayne        )

The foregoing, Commercial **Notice by Affidavit of Rejection of Your Offer to Contract With my Counter-Offer of Contract # DCJEB-18945** for Damita C. Johnson El Bey, Affiant, and any other derivatives thereof; was acknowledged before me:

*Gerald F. Gay Jr.*

Witness my hand and official seal:

My Commission Expires: **MARCH 10, 2020**

Notary Public: **DONALD F. GAY JR.**

DONALD F. GAY JR.
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires March 10, 2020
Acting in the County of *in Wayne*

Dear Damita C Johnson,

You were recently sent a notice that you are eligible to receive a payment as a result of an agreement between federal banking regulators and Bank of America in connection with an enforcement action related to deficient mortgage servicing and foreclosure processes.

**This letter includes your check.**  It also explains the amount of the payment, why you are receiving a payment, how to cash the check, and other important information and disclosures.

## Your payment is: $2,000.00.

### Why you are receiving a payment

Earlier this year, Bank of America entered into an agreement with federal banking regulators—the Office of Comptroller of the Currency and the Board of Governors of the Federal Reserve System.  This agreement resolved the Independent Foreclosure Review required by the regulators.  Additional information about this agreement can be found at www.occ.gov and www.federalreserve.gov.

Regulators determined your payment amount based on the stage of your foreclosure process and other considerations related to your foreclosure.

### How to cash the check

**You must cash or deposit the check within 90 days, or the check will be void.**  All borrowers listed on the check must sign it to cash it.

> ## The payment amount is final.
> ## There is no process to appeal the payment.

*Continued on reverse side*

A 13B1 000141616

OCC2013

THIS DOCUMENT CONTAINS ANTI-THEFT DEVICES INCLUDING MICRO PRINTING AND A COLORED BACKGROUND. ABSENCE OF THESE FEATURES INDICATE A COPY.

Fund 1 Independent Foreclosure Review Payment QSF
Loan Servicer: Bank of America
P.O. Box 8054
Faribault, MN 55021-9454

The Huntington National Bank
56-1512
441

**Check No. 9120851**

| DATE | CLAIM NUMBER | AMOUNT |
|---|---|---|
| April 26, 2013 | 1812756017 | $2,000.00 |

VOID AFTER NINETY (90) DAYS
**NOT VALID FOR AMOUNT OTHER THAN $2,000.00**
All Payee's signatures required on back in order for this instrument to be paid.

Financial Institutions may call
1-855-460-1528 to verify this check.

Pay:  TWO THOUSAND DOLLARS AND NO CENTS
Pay to the order of: DAMITA C JOHNSON

*Paul V___l*
Authorized Signature

⑆9120851⑆ ⑆044115126⑆ 01893001354⑆

*EXHIBIT F*

2008 MAY 15 PM 1:23

ZOOB MAY 28 PM 2:53

ALPHA TITLE AGENCY, INC.
13407 FARMINGTON
SUITE 101
LIVONIA, MI 481.

Bernard J. Youngblood
Wayne County Register of Deeds
May 28, 2008   02:53 PM
Liber 47263 Page 1063-1070
#208217969   MTG   FEE: $36.00

# MORTGAGE

**State of Michigan**

Return To:

| FHA Case No. |
| --- |
| 261-9438672-703 |

**United Wholesale Mortgage**
**555 South Adams Road, Birmingham, MICHIGAN**
**48009**

MIN 100032413508065989

THIS MORTGAGE ("Security Instrument") is given on **May 02, 2008**
The Mortgagor is **Damita C Johnson, A SINGLE WOMAN**

, whose address is

**18945 Fielding St, Detroit, MI 48219-2511**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **United Wholesale Mortgage**

("Lender") is organized and existing under the laws of **MICHIGAN**                    , and
has an address of **555 South Adams Road Birmingham, MICHIGAN 48009**
. Borrower owes Lender the principal sum of
**Seventy Nine Thousand Sixty Eight and 00/100**
Dollars (U.S. $        **79,068.00**        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**June 01, 2038**                    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b)

**1350806598**

FHA Michigan Mortgage with MERS - 4/96
VMP-4N(MI) (0401).03          Amended 2/01
Page 1 of 8
VMP Mortgage Solutions (800)521-7291
Initials:

36

the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as the nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **Wayne**

County, Michigan:

**CITY OF DETROIT, WAYNE COUNTY MICHIGAN**

**THE NORTH 18 FEET OF LOT 91 AND THE SOUTH 22 FEET OF LOT 92, C.W HARRAH'S REDFORD SUBDIVISION, AS RECORDED IN LIBER 57, PAGE 80 OF PLATS, WAYNE COUNTY RECORDS**

Parcel ID Number: **WARD 22 ITEM 102910**
which has the address of **18945 Fielding St**

[Street]

**Detroit**                          [City], Michigan **48219-2511** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance

1350806598

VMP-4N(MI) (0401).03                    Page 2 of 8                    Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        Damita C Johnson              -Borrower

_____        _____ (Seal)
                                                                      -Borrower

                    _____ (Seal)        _____ (Seal)
                                  -Borrower                      -Borrower

                    _____ (Seal)        _____ (Seal)
                                  -Borrower                      -Borrower

                    _____ (Seal)        _____ (Seal)
                                  -Borrower                      -Borrower

**STATE OF MICHIGAN,**                    *Wayne*        *WAYNE*        **County ss:**
    Acknowledged before me in
County, Michigan, on **May 02, 2008**                                          by
**Damita C Johnson**

┌─────────────────────────────┐
│     **DONALD RUDICK**            │       _____
│ Notary Public - Michigan    │
│     Oakland County          │       Notary Public, State of Michigan,
│ My Comm. Expires April 30, 2012 │   County of  *OAKLAND*
└─────────────────────────────┘       My commission expires  *4/30/2012*
                                      Acting in the County of  *WAYNE*

This instrument was prepared by **Patricia  Neault**
**555 South Adams Road, Birmingham, MICHIGAN 48009**

1350806598

VMP®-4N(MI) (0401).03                    Page 8 of 8

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

2009 OCT -2 AM 8: 29

Bernard J. Youngblood
Wayne County Register of Deeds
October 02, 2009   08:29 AM
Liber 48148 Page 798-798
#209336964   ASG   FEE: $15.00

*Example 1*

## ASSIGNMENT OF MORTGAGE

Snead, John                                                 T&T # 112335F02

KNOW ALL MEN BY THESE PRESENTS, that Mortgage Electronic Registration Systems, Inc as nominee for Lender and Lenders successors and/or assigns, 1595 Spring Hill Rd, suite 310, Vienna, VA 22182, party of the first part, for and in consideration of the sum of One Dollar ($1.00) and other valuable considerations, lawful money of the United States of America, to it paid by: The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate Holders of CWABS 2004-05, 400 Countrywide Way, Simi Valley, CA 93065-6298, party of the second part, the receipt whereof is hereby acknowledged, has sold, assigned and transferred, and does hereby sell, assign and transfer to the said party of the second part, all the right, title and interest of the said party of the first part in and to a certain real estate mortgage made by John Snead, A Married Man and Enola Snead, His Wife, original mortgagor(s), to Mortgage Electronic Registration Systems, Inc., as nominee for lender and lender's successors and/or assigns, Mortgagee, dated April 28, 2004, and recorded on June 7, 2004 in Liber 40734 on Page 540, in Wayne county records, Michigan.

IN WITNESS WHEREOF, said party of the first part has caused these presents to be signed by its duly authorized officers and its corporate seal to be hereunto affixed, this 29th day of September, 2009.

In the presence of:                                 Signed:

                                                    Mortgage Electronic Registration Systems, Inc as nominee for
                                                    Lender and Lenders successors and/or assigns

                                                    By _____
                                                    Kenneth E. Kurel, Vice President, for Mortgage Electronic
                                                    Registration Systems, Inc., pursuant to Agreement for Signing
                                                    Authority dated 05/19/2009

STATE OF MICHIGAN          )
                           )SS.
COUNTY OF OAKLAND          )
This instrument was acknowledged before me in Oakland County, State of Michigan, on this 29th day of September, 2009, by Kenneth E. Kurel, Vice President, for Mortgage Electronic Registration Systems, Inc., pursuant to Agreement for Signing Authority dated 05/19/2009, for the corporation.

                                                    Danielle K. Olkowski, Notary public
                                                    State of Michigan, County of Macomb
                                                    My commission expires January 4, 2013
                                                    Acting in the County of Oakland

| When Recorded Return To: | Drafted by: Kenneth E. Kurel |
| Trott & Trott, P.C. | Trott & Trott, P.C. |
| 31440 Northwestern Highway, Suite 200 | 31440 Northwestern Highway, Suite 200 |
| Farmington Hills, MI 48334-2525 | Farmington Hills, MI 48334-2525 |

City of Detroit:
Legal Description:
Lots 19 and 20, including adjoining 1/2 of the vacated alley at the rear thereof, of Allen L. Lamphere's Redford Subdivision, according to the Plat Thereof Recorded in Liber 28 of Plats, Page 98 of Wayne County Records

Tax Parcel No. 22-116352 Lot 1922-116351 Lot 20

Property Address
16734 Lamphere St
Detroit, MI 48219-3761

*Example*

2013 JUN -4  AM 10: 48

Bernard J. Youngblood
Wayne County Register of Deeds
June 04, 2013  10:48 AM
Inst:2013293967  AFF  Pages:23
Liber:50818  Page:1130

## AFFIDAVIT OF RECORDING

Drafted by: Usir Nynetjer El Bey

Legal Description Attached

On this 30ᵗʰ day of __May__, 20_13_, for the purpose of notification, I, the undersigned Trustee Custodian Usir N. El Bey located in the County of Wayne and State of Michigan, do solemnly swear or affirm that I Usir Nynetjer El Bey recorded this Affidavit of Recording in the above named County. This Affidavit verifies that the following documents are being recorded for the public viewing and for providing information on the following described premises, to wit: [**16734 Lamphere Wayne, Michigan 48219**].

1. **Exhibit A** [Legal Description] (1 pg.);

2. **Exhibit B** [Custodian of Records for Property] (2 pgs.);

3. **Exhibit C** [Usir El Bey's f.k.a. John Snead PSA Summary Report / Better Business Exchange Audit for CWABS Inc. Asset-Backed Certificates Series 2004-5 Trust] (16 pgs.);

4. **Exhibit D** [United States of America Securities Exchange Commission Pooling and Servicing Agreement (PSA) Attestation] (1 pg.); [**The public document PSA can be viewed @ the following website http://www.secinfo.com/drjtj.12Pm.d.htm (210 pgs.)**]

5. **Exhibit E** [Usir El Bey's Wayne County Sheriff's Office Freedom of Information Act (FOIA) Request Denial] (2 pgs.);

### Property Legal Description:

[Lots 19 and 20, including adjoining ½ of the vacated alley at the rear thereof, of ALLEN L. LAMPHERE'S REDFORD SUBDIVISION, according to the plat thereof recorded in Liber 28 of Plats, page 98 of Wayne County Records];

Usir N. El Bey
**PRINTED NAME**

Usir N. El Bey
**SIGNATURE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ACKNOWLEDGEMENT OF NOTARY

STATE OF MICIHGAN  )
COUNTY OF WAYNE  )

On this day, ~~Jun~~ May 30, 2013, before me, Donald Franklin Gay Jr., Notary, personally appeared Usir Nynetjer El Bey, known to me (or proved to me on the basis of satisfactory evidence of identification) to be the living man whose name is subscribed upon this instrument and acknowledged to me that he executed the same in his authorized capacity; and by his signature on this instrument, Usir Nynetjer El Bey has acted on behalf of the person who executed this instrument.

Witnessed by my hand and official seal,

_____  **SEAL**

My Commission Expires: March 10, 2020

DONALD F. GAY JR.
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires March 10, 2020
Acting in the County of _WAYNE_

# Better Business Exchange

# Securitization Audit



USIR EL BEY f.k.a. JOHN SNEAD PSA SUMMARY REPORT

AUGUST 24, 2011

**Cwabs Inc. Asset-Backed Certificates Series 2004-5 Trust**

Cwabs Inc Asset-Backed Certificates Series 2004-5 Trust

## TRUST INFORMATION

LINK TO PSA:

http://www.secinfo.com/drjtj.12Pm.d.htm

Dated as of May 1, 2004

$4,695,349,000.00 (Approximate)

| | |
|---|---|
| Issuing Entity | Cwabs Inc. Asset-Backed Certificates Series 2004-5 |
| Master Servicer | Countrywide Home Loans, Servicing, LP |
| Trustee | The Bank of New York |
| Co-Trustee | BNY Western Trust Company |
| Depositor | Cwabs, Inc. |
| Seller | Countrywide Home Loans, Inc. |
| Seller | Countrywide LFT LLC |

2

## SUMMARY INFORMATION INDEX

| | |
|---|---|
| **Issuing Entity** | **Cwabs Inc. Asset-Backed Certificates Series 2004-5** |
| **Title of Series** | **Cwabs Inc. Asset-Backed Certificates Series 2004-5** |
| **Cut-off Date** | **May 1, 2004** |
| **Closing Date** | **On or about May 27, 2004** |
| **Depositor** | **CWABS, Inc., a Delaware corporation.** |
| **Master Servicer** | **Countrywide Home Loans Servicing LP, a Texas limited partnership** |
| **Seller** | **Countrywide Home Loans, Inc.** |
| **Seller** | **Countrywide LFT LLC** |
| **Trustee** | **The Bank of New York** |
| **Co-Trustee** | **BNY Western Trust Company** |
| **Distribution Dates** | **Distributions on the offered certificates will be made on 25th day of any calendar month, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day, commencing in June 2007.** |

3

## DEFINITION OF PARTIES

**Issuing Entity -** The Issuing Entity (Cwabs Inc. Asset-Backed Certificates Series 2004-5) will be a New York common law trust (the "Trust"), formed on the Closing Date pursuant to the Pooling and Servicing Agreement. The Mortgage Loans will be deposited by the Depositor into the Trust under the Pooling and Servicing Agreement. The Trust will have no officers or directors and no continuing duties other than to hold the assets underlying the Certificates and to issue the Certificates. The fiscal year end of the Issuing Entity will be December 31. The Trust will be administered by the Trustee and the Securities Administrator pursuant to the terms of the Pooling and Servicing Agreement.

**Sellers (Sponsors) -** The Sellers - Countrywide Home Loans, Inc. and Countrywide LFT LLC ("**Countrywide**") were indirect, wholly-owned subsidiary of Countrywide Financial Corporation, and together were the lender that securitizes the pool of mortgage loans. This means that it was the final aggregator of the loan pool and then sold the loans directly to the Depositor, which it turn sold them to the securitization Trust. In order to obtain the desired ratings from the ratings agencies such as Moody's, Fitch and S&P, the Sponsor normally is required to retain some exposure to the future value and performance of the loans in the form of purchase of the most deeply subordinated classes of the securities issued by the Trust, i.e. the classes last in line for distributions and first in line to absorb losses (commonly referred to as the "first loss pieces" of the deal).

**Master Servicer -** The Master Servicer is Countrywide Home Loans Servicing LP, a Texas limited partnership and an indirect, wholly-owned subsidiary of Countrywide Financial Corporation, and is the Trustee's representative for assuring that the Servicer(s) abide by the terms of the servicing contracts. For trusts with more than one servicer, the Master Servicer has an important administrative role in consolidating the monthly reports and remittances of funds from the individual servicers into a single data package for the Trustee. If a Servicer fails to perform or goes out of business or suffers a major downgrade in its servicer rating, then the Master Servicer must step in, find a replacement and assure that no interruption of essential servicing functions occurs. Like all servicers, the Master Servicer may be a division or affiliate of the Sponsor but is solely responsible to the Trustee. The Master Servicer receives a fee, small compared to the Primary Servicer's fee, based on the average balance of all loans in the Trust.

**Depositor –** CWABS, Inc., a Delaware corporation (the "**Depositor**") is a direct, wholly owned subsidiary of Countrywide Financial Corporation. The Depositor was incorporated in the State of Delaware on August 26, 1996. The Depositor exists for the sole purpose of enabling the transaction to have the key elements that make it a securitization in the first place: a "true sale" of the mortgage loans to a "bankruptcy-remote" and "FDIC-remote" purchaser. The Depositor purchases the loans from the Sponsor, sells the loans to the Trustee of the securitization Trust, and uses the proceeds received from the Trust to pay the Sponsor for the Depositor's own purchase of the loans. It all happens simultaneously, or as nearly so as theoretically possible. The length of time that the Depositor owns the loans has been described as "one nanosecond."

The Depositor has no other functions, so it needs no more than a handful of employees and officers. Nevertheless, it is essential for the "true sale" and "bankruptcy-remote"/"FDIC-remote" analysis that the Depositor maintains its own corporate existence separate from the Sponsor and the Trust and observes the formalities of this corporate separateness at all times. The "Elephant in the Room" in all structured financial transactions is the mandatory requirement to create at least two "true sales" of the notes and mortgages between the Originator and the Trustee for the Trust so as to make the assets of the Trust both "bankruptcy" and "FDIC" remote from the originator. And, these

4

"true sales" will be documented by representations and attestations signed by the parties; by attorney opinion letters; by asset purchase and sale agreements; by proof of adequate and reasonably equivalent consideration for each purchase; by "true sale" reports from the three major "ratings agencies" (Standard & Poors, Moody's, and Fitch) and by transfer and delivery receipts for mortgage notes endorsed in blank. The limited purposes of the Depositor are, in general, to acquire, own and sell mortgage loans; to issue, acquire, own, hold and sell mortgage pass-through securities and home equity asset-backed pass-through securities which represent ownership interests in mortgage loans, collections thereon and related properties; and to engage in any acts which are incidental to, or necessary, suitable or convenient to accomplish, the foregoing.

The Depositor will have limited obligations and rights under the Pooling and Servicing Agreement after the Closing Date, including, but not limited to, repurchasing or substituting Mortgage Loans due to certain breaches of representations and warranties or as a result of defective documentation, repurchasing at its option certain Mortgage Loans that have become delinquent, repurchasing Mortgage Loans that are required to be transferred to the Sponsor in order to permit the Sponsor to exercise rights that it may have against the originator of the Mortgage Loans or, in the circumstances described in the prospectus under *"Description of the Securities—Termination"* repurchasing all of the Mortgage Loans (provided there is no majority holder of the Class CE Certificates).

The Depositor registered its office in the State of Delaware at 1013 Centre Road, in the City of Wilmington, County of New Castle. The name of the corporation's registered agent at such address is The Prentice-Hall Corporation System, Inc. Its telephone number is (301) 846-8881.

**Trustee** – The Bank of New York will act as trustee (the "Trustee") under the Pooling and Servicing Agreement. The Bank of New York was a global financial services company established in 1784 by the American Founding Father Alexander Hamilton. It existed until its merger with the Mellon Financial Corporation on July 2, 2007. The company now continues under the new name of The Bank of New York Mellon or BNY Mellon. The Depositor and the Servicer may maintain other banking relationships in the ordinary course of business with the Trustee. The Trustee's corporate head office is located at One Wall Street, New York, New York 10005, Attention: Corporate Trust or at such other address as the Trustee may designate from time to time.

The Bank of New York Mellon has been, and currently is, serving as trustee for numerous securities transactions involving similar residential mortgage pool assets to those found in this transaction.

The Trustee has limited administrative responsibilities under the terms of the Pooling and Servicing Agreement. The Trustee is not responsible for securities administration, does not monitor access to and activity in the Distribution Account or compliance with covenants in the Pooling and Servicing Agreement. Under the Pooling and Servicing Agreement, the Trustee will be required to make Advances to the limited extent described herein if the Servicer fails to make an Advance required under the Pooling and Servicing Agreement. See *"Description of the Securities— Advances in Respect of Delinquencies"* in the prospectus.

The Trustee may appoint one or more co-trustees if necessary to comply with the fiduciary requirements imposed by any jurisdiction in which a Mortgaged Property is located. In the case of any appointment of a co-trustee, all rights, powers, duties and obligations conferred or imposed upon the Trustee will be conferred or imposed upon and exercised or performed by the Trustee and the co-trustee jointly, unless the law of a jurisdiction prohibits the Trustee from performing its duties under the Pooling and Servicing Agreement, in which event such rights, powers, duties and obligations (including the holding of title to the Trust or any portion of the Trust in any such jurisdiction) shall be exercised and performed by the co-trustee at the direction of the Trustee.

See *"Description of the Agreements—Material Terms of the Pooling and Servicing Agreements and the Underlying Servicing Agreements—The Trustee"* in the prospectus for more information about the Trustee and its obligations and rights (including the right to indemnity and reimbursement in certain circumstances) under the Pooling and Servicing Agreement.

**Co-Trustee** - BNY Western Trust Company will act as the Co-Trustee. The Co-Trustee retains possession and custody of each Mortgage File in accordance with and subject to the terms and conditions set forth in the Pooling and Servicing Agreement. Each Seller promptly delivers to the Co-Trustee, upon the execution or receipt thereof, the originals of such other documents or instruments constituting the Mortgage File that come into the possession of such Seller from time to time. Another name for the Co-Trustee, used in most trusts, is the Custodian.

The Custodian's responsibilities are to hold and safeguard the Mortgage Notes and other contents of the Mortgage Files on behalf of the Trustee and the certificateholders. The Custodian will segregate the Mortgage Files by boarding each in an electronic tracking system, which identifies the owner of the Mortgage File and the Mortgage File's specific location in the Custodian's vault.

The Master Document Custodian takes and maintains physical possession of the original hard-copy Mortgage Notes, Mortgages, Deeds of Trust and certain other "key loan documents" that the parties deem essential for the enforcement of the mortgage loan in the event of default.

- This is done for safe keeping and also to accomplish the transfer and due negotiation of possession of the Notes that is essential under the Uniform Commercial Code for a valid transfer to the Trustee to occur.

- Like the Master Servicer, the Master Document Custodian is responsible by contract solely to the Trustee (e.g., the Master Document Custodial Agreement). However unlike the Master Servicer, the Master Document Custodian is an institution wholly independent from the Servicer and the Sponsor.

- There are exceptions to this rule in the world of Fannie Mae/Freddie Mac ("GSE") securitizations. The GSE's may allow selected large originators with great secure storage capabilities (in other words, large banks) to act as their own Master Document Custodians. But even in those cases, contracts make clear that the GSE Trustee, not the originator, is the owner of the Note and the mortgage loan.

- The Master Document Custodian must review all original documents submitted into its custody for strict compliance with the specifications set forth in the Custodial Agreement, and deliver exception reports to the Trustee and/or Master Servicer as to any required documents that are missing or fail to comply with those specifications.

- In so doing the Custodian must in effect confirm that for each loan in the Trust there is a "complete and unbroken chain of transfers and assignments of the Notes and Mortgages."

- This does not necessarily require the Custodian to find assignments or endorsements naming the Depositor or the Trustee. The wording in the Master Document Custodial Agreement must be read closely. Defined terms such as "Last Endorsee" may technically allow the Custodian to approve files in which the last endorsement is from the Sponsor in blank, and no assignment to either the Depositor or the Trustee has been recorded in the local land records.

- In many private-label securitizations a single institution fulfills all of the functions related to document custody for the entire pool of loans. In these cases, the institution might be referred to simply as the "Custodian" and the governing document as the "Custodial Agreement."

6

## INTERRELATIONSHIP OF THE PARTIES



Fig.1

1. The Originator sells loans (one-by-one or in bundles) to the Securitizer (a/k/a the Seller /Sponsor) pursuant to a **Mortgage Loan Purchase and Sale Agreement** (MLPSA) or similarly-named document (in this case *Mortgage Loan Schedule*). The purpose of the MLPSA is to sell all right, title, claims, legal, equitable and any and all other interest in the loans to the Securitizer-Sponsor. For Notes endorsed in "blank" which are bearer instruments under the UCC, the MLPSA normally requires acceptance and delivery receipts for all such Notes in order to fully document the "true sale." Frequently a form is prescribed for the acceptance and delivery receipt and attached as an exhibit to the MLPSA.

The MLPSA will contain representations, attestations and warranties as to the enforceability and marketability of each loan, and specify the purchaser's remedies for a breach of any "rep" or "warrant." The primary remedy is the purchaser's right to require the seller to repurchase any loan materially and adversely affected by a breach. Among the defects and events covered by "reps" and "warrants" are "Early Payment Defaults," commonly referred to as "EPD's." An EDP occurs if a loan becomes seriously (usually, 60 or more days) delinquent within a specified period of time after it has been sold to the Trust. The EDP covenants are always limited in time and normally only cover EDPs that occur within 12 to 18 months of the original sale. If an EDP occurs, then the Trust

7

can force the originator to repurchase the EPD note and replace it with a note of similar static qualities (amount, term, type, etc.)

2. The Securitizer-Sponsor sells the loans to the Depositor. This takes place in another MLPSA very similar to the first one and the same documents are created and exchange with the same or similar terms. These are typically included as exhibits to the PSA.

3. Depositor, Trustee, Master Servicer and Servicer enter into a **Pooling and Servicing Agreement** ("PSA") in which:

--- the Depositor sells all right, title, legal, equitable and any other interest in the mortgage loans to the Trustee, with requirements for acceptance and delivery receipts, often including the prescribed form as an exhibit, in similar fashion to the MLPSA's;

--- the PSA creates the trust, appoints the Trustee, and defines the classes of securities (often called "Certificates") that the trust will issue to investors and establishes the order of priority between classes of Certificates as to distributions of cash collected and losses realized with respect to the underlying loans (the highest rated Certificates are paid first and the lowest rated Certificates suffer the first losses-thus the basis for the term "structured finance"); and

--- the Servicer, Master Servicer and Trustee establish the Servicer's rights and duties, including limits and extent of a Servicer's right to deal with default, foreclosure, and Note modifications. Some PSA's include detailed loss mitigation or modification rules, and others limit any substantive modifications (such as changing the interest rate, reducing the principal debt, waiving default debt, extending the repayment term, etc.)

4. All parties including the Co-Trustee or Custodian enter into the **Custodial Agreement** in which:

- the Depositor agrees to cause the Notes and other specified key loan documents (usually including an unrecorded, recordable Assignment "in blank")(NB that several recent courts have raised serious legal questions about the assignment of a real estate instrument in blank under such theories as the statute of frauds and whether or not an assignment in blank is in fact a "recordable" legal real estate document) to be delivered to the Custodian (with the Securitizer to do the actual physical shipment);

- the Custodian agrees to inspect the Notes and other documents and to certify in designated written documents to the Trustee that the documents meet the required specifications and are in the Custodian's possession; and

- establishes a (supposedly exclusive) procedure and specified forms whereby the Servicer can obtain possession of any Note, Mortgage, Deed of Trust or other custodial document for foreclosure or payoff purposes.

## THE TRUST

### The Trust Is a New York Common Law Trust Governed By New York Law:

Based on its trust agreement, "**Cwabs Inc. Asset-Backed Certificates Series 2004-5**" (hereafter the "Trust"), is not the originator [America's Wholesale Lender is originator] of the mortgage, the servicer, or even a bank. Instead, this entity is a New York common law trust created by an agreement known as "Pooling and Service Agreement." Usir El Bey's (formerly known as John Snead) loan, along with other loans, were pooled into a trust and converted into mortgage-backed securities ("MBS") that can be bought and sold by investors — a process known as securitization.

The underlying promissory notes of each and every mortgage held by the Trust serve as generate a potential income stream for investors.

The Trust allegedly holding Usir El Bey's note was created on or about May 1, 2004, and is identified as "**Cwabs Inc. Asset-Backed Certificates Series 2004-5.**"

The Trust, by its terms, set a "closing date" of May 27, 2004. The terms of the Trust are contained in the Pooling and Servicing Agreement ("PSA" or the "Trust agreement"), which is an approximately 210-page document that creates the Trust and defines the rights, duties and obligations of the parties to the Trust Agreement. The PSA is filed under oath with the Securities and Exchange Commission.

The PSA also incorporates by reference a separate document called the Mortgage Loan Schedule, which lists all the loans by loan number, and is attached to the PSA as Exhibit F-1. These various documents, and hence the acquisition of the mortgage assets for the Trust, are governed under the law of the State of New York pursuant to section 10.03 of the PSA.

The Trust, being investigated through its trustee, The Bank of New York, is a New York Corporate Trust formed to act as a Real Estate Mortgage Investment Conduit "REMIC" trust (defined below) pursuant to the U.S. Internal Revenue Code ("IRC").

Pursuant to the terms of the Trust and the applicable Internal Revenue Service ("IRS") regulations adopted and incorporated into the terms of the Trust, the "closing date" of the Trust (MAY 27, 2004) is also the "Startup Day" for the Trust under the REMIC provisions of the IRC. The Startup Day is significant because the IRC ties the limitations upon which a REMIC trust may be receive its assets to this date. The relevant portion of the IRC addressing the definition of a REMIC is: the mortgage assets for the Trust, are governed under the law of the State of New York pursuant to section 10.03 of the PSA.

> (a) General rule. For purposes of this title, the terms 'real estate mortgage investment conduit' and 'REMIC' mean any entity—
> (1) to which an election to be treated as a REMIC applies for the taxable year and all prior taxable years,
> (2) all of the interests in which are regular interests or residual interests,
> (3) which has 1 (and only 1) class of residual interests (and all distributions, if any, with respect to such interests are pro rata),
> (4) *__as of the close of the 3rd month beginning after the startup day__* and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments.

26 U.S.C.S. § 860D (emphasis added).


The IRC also provides definitions of prohibited transactions and prohibited contributions which are relevant to this audit. In the context of this audit, the relevant statute is the definition of prohibited contributions which is as follows:

26 U.S.C. 860G(d)(1) states:

> Except as provided in section 860G(d)(2), "if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution."

26 U.S.C. 860G(d)(2) states:

> (2) Exceptions. Paragraph (1) shall not apply to any contribution which is made in cash and is described in any of the following subparagraphs:
> (A) Any contribution to facilitate a clean-up call (as defined in regulations) or a qualified liquidation.
> (B) Any payment in the nature of a guarantee.
> (C) Any contribution during the 3-month period beginning on the startup day.
> (D) Any contribution to a qualified reserve fund by any holder of a residual interest in the REMIC.
> (E) Any other contribution permitted in regulations.

The PSA (primarily in section 8.11) addresses these sections of the IRC by obliging the parties to the Trust to avoid any action which might jeopardize the tax status of any REMIC and/or impose any tax upon the Trust for prohibited contributions or prohibited transactions.

These PSA provisions are important to the analysis of the facts in this audit because of the interplay between the New York trust law, the IRC's REMIC provisions, and the PSA's incorporation of the IRC REMIC provisions.

### The Trust Instrument/PSA Sets Forth a Specific Time, Method And Manner Of Funding The Trust

The Trust, through its Trustee which has foreclosed on Usir El Bey's property has included in the terms of its Trust agreement (the PSA) a specific time, method and manner of funding the Trust with its assets.

The most critical time is the Trust's closing date, May 27, 2004. According to the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the closing date. This requirement is to ensure that the Trust will receive REMIC status and thus be exempt from federal income taxation.

Sections 2.02 and, in particular, 2.03 of the PSA provides for a window of 90 or 270 days, respectively, after the Trust closing date, in which the Trust may complete any missing paperwork or finalize any documents necessary to complete the transfers of assets from the depositor to the Trust. Thus, for an asset to become an asset of the Trust it must have been transferred to the Trust within the time set forth in the PSA.

The additional 90 days in the timeline requirement is incorporated from the REMIC provisions of the IRC to provide a "clean-up period" for a REMIC to complete the documents associated with the transfers of assets to a REMIC after the startup day (which is also the Trust closing date). Therefore, according to the plain terms of the Trust agreement in this case, the closing date/startup date was May 27, 2004 and the last day for transfer of assets into the Trust was August 25, 2004.

### THE TRUST AGREEMENT PROVIDES THE ONLY MANNER IN WHICH ASSETS MAY BE PROPERLY TRANSFERRED TO THE TRUST AND ANY ACT IN CONTRAVENTION OF THE TRUST AGREEMENT IS VOID

### Transfer of Assets to the Trust Pursuant to the Trust Instrument/PSA

As a generic matter, there are several methods by which the underlying assets of the Trust, specifically the individual promissory notes, might be transferred or conveyed. A trust's ability to transact is restricted to the actions authorized by its trust documents. In this case, the Trust documents permit only one specific method of transfer to the Trust. That method is set forth in Section 2.01 of the PSA:

> (g) In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered to, and deposited with, the Co-Trustee (or, in the case

of the Delay Delivery Mortgage Loans, will deliver to, and deposit with, the Co-Trustee within the time periods specified in the definition of Delay Delivery Mortgage Loans) (except as provided in clause (vi) below) for the benefit of the Certificateholders, the following documents or instruments with respect to each such Mortgage Loan so assigned (with respect to each Mortgage Loan, clause (i) through (vi) below, together, the *"Mortgage File"* for each such Mortgage Loan):

(i) the original Mortgage Note, endorsed by the applicable Seller or the originator of such Mortgage Loan, without recourse, in the following form:
*"Pay to the order of _____ without recourse"*,
with all intervening endorsements that show a complete chain of endorsement from the originator to the applicable Seller, or, if the original Mortgage Note has been lost or destroyed and not replaced, an original lost note affidavit from the applicable Seller, stating that the original Mortgage Note was lost or destroyed, together with a copy of the related Mortgage Note;

(ii) in the case of each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage, and in the case of each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded;

(iii) in the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage to "Asset-Backed Certificates, Series 2004-5, CWABS, Inc., by The Bank of New York, a New York banking corporation, as trustee under the Pooling and Servicing Agreement dated as of May 1, 2004, without recourse" (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which such assignment relates);

**(iv) the original recorded assignment or assignments of the Mortgage together with all interim recorded assignments of such Mortgage (noting the presence of a MIN in the case of each MERS Mortgage Loan);**

(v) the original or copies of each assumption, modification, written assurance or substitution agreement, if any; and

(vi) the original or duplicate original lender's title policy and all riders thereto or, in the event such original title policy has not been received from the insurer, such original or duplicate original lender's title policy and all riders thereto shall be delivered within one year of the Closing Date.

In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will cause, at such Seller's own expense, the MERS(R) System to indicate (and provide evidence to the Trustee that it has done so) that such Mortgage Loans have been assigned by such Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files (a) the code *"[IDENTIFY TRUSTEE SPECIFIC CODE]"* in the field *"[IDENTIFY THE FIELD*

11

NAME FOR TRUSTEE]" which identifies the Trustee and (b) the code "[IDENTIFY SERIES SPECIFIC CODE NUMBER]" in the field "Pool Field" which identifies the series of the Certificates issued in connection with such Mortgage Loans. The Sellers further agree that they will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

Notwithstanding anything to the contrary in this Agreement, within thirty days after the Closing Date, CHL (on behalf of each Seller) shall either (i) deliver to the Co-Trustee the Mortgage File as required pursuant to this Section 2.01 for each Delay Delivery Mortgage Loan or (ii) (A) repurchase the Delay Delivery Mortgage Loan or (B) substitute the Delay Delivery Mortgage Loan for a Replacement Mortgage Loan, which repurchase or substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.03, provided that if CHL fails to deliver a Mortgage File for any Delay Delivery Mortgage Loan within the period provided in the prior sentence, the cure period provided for in Section 2.02 or in Section 2.03 shall not apply to the initial delivery of the Mortgage File for such Delay Delivery Mortgage Loan, but rather CHL shall have five (5) Business Days to cure such failure to deliver. CHL shall promptly provide each Rating Agency with written notice of any cure, repurchase or substitution made pursuant to the proviso of the preceding sentence. On or before the thirtieth (30th) day (or if such thirtieth day is not a Business Day, the succeeding Business Day) after the Closing Date, the Trustee shall, in accordance with the provisions of Section 2.02, send a Delay Delivery Certification substantially in the form annexed hereto as Exhibit G-3 (with any applicable exceptions noted thereon) for all Delay Delivery Mortgage Loans delivered within thirty (30) days after such date. The Trustee will promptly send a copy of such Delay Delivery Certification to each Rating Agency.

**"The Trust Fund will not acquire or hold any Mortgage Loan that would violate the representations made by CHL in Section 2.03(b)(70), (76)(vii) or (76)(viii)."**

The analysis of this transfer language requires consideration of each part. In the second paragraph of the language in the Trust Agreement, the first statement is one of transfer, stating *"the Depositor has delivered to and deposited with the Trustee or the Custodian the following documents"*.   The key document is the original mortgage note, which requires mandatory endorsements found in this language: *"the original mortgage note....endorsed without recourse"*. The key language in the entire paragraph is the final statement which reads: *"with all intervening endorsements that show a complete chain of endorsement from the originator to the applicable Seller..."*.

A requirement of an unbroken chain of endorsements is the requirement of certification of the final contents of the collateral file for the benefit of the Trust.  The foregoing requirement demonstrates clearly that while the parties to the securitization made provisions whereby promissory notes for this Trust might be delivered in blank to the Trustee, there were two requirements that were mandatory: First, all notes sold to the Trust were required to have an unbroken chain of endorsements from the original payee to the person endorsing it to the Trustee. This requirement stems from a particular business concern in securitization, namely   to evidence that there was in fact a "true sale" of the securitized assets and that they are in no way still property of the originator, seller, or depositor, and thus not subject to the claims of  creditors of the originator, seller, or depositor. Second, there was a requirement that ultimately, within 90 days of the Trust closing date, the actual promissory note must be endorsed over to the trustee for the specific trust to effectively transfer the asset into the trust and therefore make the Homeowner's note Trust property. This requirement finds support in logic and law and is, in fact, the ancient and settled law of New York on this issue.

12

Third, there was a strict requirement in, and of the formatting of, the assignment to the Trustee, The Bank of New York. MERS failed to execute an assignment within the time constraints as required by Section 2.01 of the PSA.

**New York Law Governs The Mandatory Requirements To Effectively Transfer an Asset To A Trust**

It is not contested that securitization trusts, such as Cwabs Inc. Asset-Backed Certificates Series 2004-5, are subject to the common law of New York. New York's trust law is ancient and settled. There are a few principles of New York Trust law that are particularly important to the analysis of whether any particular asset is an asset of a given trust. Under New York law, the analysis of whether an asset is trust property is determined under the law of gifts. In order to have a valid inter vivos gift, there must be a delivery of the gift (either by a physical delivery of the subject of the gift) or a constructive or symbolic delivery (such as by an instrument of gift) sufficient to divest the donor of dominion and control over the property. The delivery rule requires that *"[the] delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit."*

Under New York law there are four essential elements of a valid trust of personal property:

(1) A designated beneficiary;
(2) A designated trustee, who must not be the beneficiary;
(3) A fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and
(4) The actual delivery of the fund or other property or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee.

**There is no trust under the common law until there is a valid delivery of the asset in question to the Trust.**

As evidenced by the Title Search provided by Colonial Title Company, the trust failed to acquire the property within the required time pursuant to the PSA Sections 2.01 thru 2.03. Americas Wholesale Lender, is the only valid recorded Security lien holder, so as a matter of law, (a) Countywide, by selling all its claims, rights and title over the property to the Trust, cannot, nor can its successor by purchase, Bank of America, N.A., or any of its subsidiaries, enforce the security instrument, and (b) there is no trust over Usir El Bey's property which may be enforced. Any attempt to convey to the trust after August 25, 2004, will fail as the trust is already closed.

In the context of mortgage-backed securitization, it is clear that registration of the notes and mortgages in the name of the trustee for the trust is necessary for effective transfer to the trust. Within the Statutes of New York governing Trusts, Estates Powers and Trusts Law (EPTL) section 7-2.1(c) authorizes investment trusts to acquire real or personal property *"in the name of the trust as such name is designated in the instrument creating said trust."* Further, the actual contracts of the parties, which include the custodial agreements, the mortgage loan purchase agreements, and the trust instrument known as the "pooling and servicing agreement," prescribe a very specific method of transfer of the notes and mortgages to the trust. Because the method of transfer is set forth in the Trust instrument, it is not subject to any variance or exception. The Trust documents require that the promissory notes and mortgages be transferred to the Trustee, which under New York trust law requires valid delivery.

The delivery of an asset to a trustee under the terms of a corporate indenture requires strict compliance with the mandatory transfer terms of the trust indenture. Thus the Trustee in this case can only take delivery in strict compliance with the terms of the PSA/Trust document. Further, given that New York Estates Powers and Trusts Law section 7-2.1(c) authorizes a trustee to acquire property *"in the name of the trust as such name is designated in the instrument creating said trust property,"* there should be little doubt that for transfer to an trustee to be effective, the property must be registered in the name of the trustee for the particular trust. Trust property cannot be, as the Defendant argues, held with incomplete endorsements and assignments that do not indicate that the property is held in

trust by a trustee for a specific beneficiary trust. In fact, it is clear in the law of New York that an attempt to transfer to a trust which fails to specify both a trustee and a beneficiary is ineffective as a conveyance to the Trust. *"The failure to name a beneficiary for the Trustee renders the assignment without merit."*

## THE TRUST NEVER PROPERLY ACQUIRED THE MORTGAGE NOTE AND THE TRUST CANNOT CURE ITS FATAL STANDING DEFECT

Under New York law there is no trust over property that has not been properly transferred to a trust. Cwabs Inc. Asset-Backed Certificates Series 2004-5 stated to the U.S. Securities and Exchange Commission, in filings under oath, that it has assets in excess of $4.69 billion. To acquire assets, the Trust must be funded in accordance with the requirements of the PSA/Trust documents. The pertinent terms of the agreement are found at §2.01 (Conveyance of Mortgage Loans to Trustee) of the PSA. This section details how the mortgage notes in the instant case were transferred from Countrywide Home Loans, Inc. (as Seller) to CWABS, Inc. (the Depositor) to The Bank of New York (the Trustee). CWABS, Inc. as the Depositor was required to deliver to The Bank of New York, the original mortgage note showing an unbroken chain of endorsements from the original payee to the person endorsing it to the Trustee. No later than August 25, 2004 there should have been - at a minimum - endorsements from Countrywide Home Loans, Inc. to CWABS, Inc., then CWABS, Inc. to "The Bank of New York as Trustee for Cwabs Inc. Asset-Backed Certificates Series 2004-5." There has been no valid assignment of the mortgage, thus, based on the title search by Triumph Research Specialists, the Trust never possessed the mortgage note per the terms of the PSA.

Any attempt by the Trust, or Bank of America, to transfer the promissory note or mortgage deed to the Trust at this late date would fail for numerous reasons, not the least of which is that the closing date of May 27, 2004 passed more than 7 years ago. By the terms of the Trust and the applicable provision of the Internal Revenue Code incorporated into and a part of the Trust agreement, the promissory note cannot be transferred to the Trust.

## THE TRUST IS NOT ENTITLED TO THE MONEY SECURED BY THE HOMEOWNER`S MORTGAGE AND CANNOT FORECLOSE

Because the fact that Bank of America has no evidence of ever transferring the note after the closing date of the trust and the filing of the form 15D is that Plaintiff's mortgage has never been conveyed to the Trust and a conveyance to the Trust at this time would be void as violating the terms of the PSA, one is left with one clear and inescapable proposition: The Trust has never owned the Homeowner`s promissory note or mortgage and the Trust can never own the Homeowner`s promissory note or mortgage.

The "original lender" America's Wholesale Lender through it nominee, Mortgage Electronic Registration Systems, Inc., has not lawfully conveyed the Deed and its Note in a proper legal manner, to the Trust being, Cwabs Inc. Asset-Backed Certificates Series 2004-5, in keeping with the rules of the Pooling and Servicing Agreement.

## USIR EL BEY HAS LAWFUL STANDING TO SCRUTINIZE THE VALIDITY OF RECORDING OF INDENTURE

Under the *Securities Act of 1933* – TITLE 15 – CHAPTER 2 A – SUBCHAPTER III – Sec. 77ccc "Definitions":

(7) The term "indenture" means any mortgage, deed of trust, trust or other indenture, or similar instrument or agreement (including any supplement or amendment to any of the foregoing), under which securities are outstanding or are to be issued, whether or not any property, real or personal, is, or is to be, pledged, mortgaged, assigned, or conveyed thereunder.

14

Under the *Securities Act of 1933* – TITLE 15 – CHAPTER 2 A – SUBCHAPTER III – Sec. 77nnn "Evidence of recording of indenture":

> (b) **"Evidence of recording of indenture"** - If the indenture to be qualified is or is to be secured by the mortgage or pledge of property, the obligor upon the indenture securities shall furnish to the indenture trustee - (1) promptly after the execution and delivery of the indenture, an opinion of counsel (who may be of counsel for such obligor) either stating that in the opinion of such counsel the indenture has been properly recorded and filed so as to make effective the lien intended to be created thereby, and reciting the details of such action, or stating that in the opinion of such counsel no such action is necessary to make such lien effective; and (2) at least annually after the execution and delivery of the indenture, an opinion of counsel (who may be of counsel for such obligor) either stating that in the opinion of such counsel such action has been taken with respect to the recording, filing, re-recording, and refiling of the indenture as is necessary to maintain the lien of such indenture, and reciting the details of such action, or stating that in the opinion of such counsel no such action is necessary to maintain such lien.

In clear violation of the above, as evidenced with the title search (Exhibit B), there was **no** opinion of counsel, **no** intervening recordings, and there was **no** filing at the Wayne County Records Office of a debt obligation to the Trust.

### Usir El Bey Has Lawful Standing To Demand Presentment

Usir El Bey can assert his right as obligor to demand presentment of the original debt instrument pursuant to M.C.L. 440.3501 which states:

> (1) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

> (2) (b) Upon demand of the person to whom presentment is made, the person making presentment must: (i) Exhibit the instrument; (ii) Give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so; and (iii) Sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

> (3) Without dishonoring the instrument, the party to whom presentment is made may: (i) Return the instrument for lack of a necessary indorsement; or (ii) Refuse payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

Presentment requires exhibition of the instrument for the purpose of enforcement (production of the original ink-signed note), and as Wells Fargo Bank is not the holder in due course of the alleged debt obligation and no longer possesses the rights to enforce, presentation of a copy of the alleged debt obligation would be a blatant violation, and thereby should be deemed inadmissible as evidence. Introduction of a copy of the alleged debt obligation rather than the original ink-signed promissory note, by Wells Fargo Bank, using the excuse that it is of "customary procedure", is inadmissible. In United States of America v. Hibernia National Bank, 841 F.2d 592 96 A.L.R.Fed. 895, 5 UCC Rep.Serv.2d 1392, United States Court of Appeals, Fifth Circuit. April 5, 1988. Rehearing and Rehearing En Banc Denied May 9, 1988, the court stated: *"Hibernia's reliance on commercial custom is misplaced. Commercial custom does not apply where the U.C.C. provides otherwise".*

NB. A certified copy of the Pooling & Servicing Agreement has been ordered from the Securities & Exchange Commission (SEC) which provides absolute indicia of reliability, and is therefore admissible evidence under federal and state law.

Exhibit 31
----------

CERTIFICATION
-------------

I, Steve Bailey, certify that:

1. I have reviewed this annual report on Form 10-K, and all reports on Form 8-K containing distribution and servicing reports filed in respect of periods included in the year covered by this annual report, of CWABS, Inc., Asset-Backed Certificates Trust 2004-5;

2. Based on my knowledge, the information in these reports, taken as a whole, does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading as of the last day of the period covered by this annual report;

3. Based on my knowledge, the distribution or servicing information required to be provided to the trustee by the master servicer under the pooling and servicing, or similar, agreement, for inclusion in these reports is included in these reports;

4. I am responsible for reviewing the activities performed by the master servicer under the pooling and servicing, or similar, agreement and based upon my knowledge and the annual compliance review required under that agreement, and except as disclosed in the reports, the master servicer has fulfilled its obligations under that agreement; and

5. The reports disclose all significant deficiencies relating to the master servicer's compliance with the minimum servicing standards based upon the report provided by an independent public accountant, after conducting a review in compliance with the Uniform Single Attestation Program for Mortgage Bankers or similar procedure, as set forth in the pooling and servicing, or similar, agreement, that is included in these reports.

In giving the certifications above, I have reasonably relied on information provided to me by the following unaffiliated parties: The Bank of New York, as Trustee.

Date: March 29, 2005

                    /s/ Steve Bailey
                    ------------------
                    Steve Bailey
                    Senior Managing Director

*Example 4*



# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

## ATTESTATION

I HEREBY ATTEST

that:

Attached is a copy of, cover page (page 1) and exhibit 99.1, as

contained in, current report on Form 8-K, dated

May 27, 2004, received in this Commission June 23, 2004,

under the name CWABS Inc. Asset-Backed Certificates Series

2004-5, File No. 333-109272-14, pursuant to the provisions of

the Securities Exchange Act of 1934.

on file in this Commission
November 2, 2011

_____
(Date)

*Larry Mills*
*Records Officer*

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, D.C., which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or any one of them, are authorized to execute the above attestation.

For the Commission

*Elizabeth M. Murphy*

_____
Secretary

SEC 334 (10/07)

**Documents Enforced Pursuant to CFR 22 Foreign Correspondence section 131.1 & 131.2 USC Title 4 Section 42**

06013144-1

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

I Certify That the document hereunto annexed is under the Seal of the Secretary of State of the State(s) of Pennsylvania, and that such Seal(s) is/are entitled to full faith and credit.*

In testimony whereof, I, Condoleezza Rice, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this sixth day of March, 2006.

Secretary of State

By_____
Assistant Authentication Officer,
Department of State

*Issued pursuant to CHXIV, State of Sept. 15, 1789. 1 Stat. 68-69; 22 USC 2657; 22USC 2651a; 5 USC 301; 28 USE 1733 et. seq.; 8 USC 1443(f); RULE 44 Federal Rules of Civil Procedure.*

*For the contents of the annexed document,the Department assumes no responsibility*

*This certificate is not valid if it is removed or altered in any way whatsoever*

# United Nations Declaration on the Rights of Indigenous Peoples



**Adopted by General Assembly Resolution 61/295 on 13 September 2007**

*The General Assembly,*

*Guided* by the purposes and principles of the Charter of the United Nations, and good faith in the fulfilment of the obligations assumed by States in accordance with the Charter,

*Affirming* that indigenous peoples are equal to all other peoples, while recognizing the right of all peoples to be different, to consider themselves different, and to be respected as such,

*Affirming also* that all peoples contribute to the diversity and richness of civilizations and cultures, which constitute the common heritage of humankind,

*Affirming further* that all doctrines, policies and practices based on or advocating superiority of peoples or individuals on the basis of national origin or racial, religious, ethnic or cultural differences are racist, scientifically false, legally invalid, morally condemnable and socially unjust,

*Reaffirming* that indigenous peoples, in the exercise of their rights, should be free from discrimination of any kind,

*Concerned* that indigenous peoples have suffered from historic injustices as a result of, inter alia, their colonization and dispossession of their lands, territories and resources, thus preventing them from exercising, in particular, their right to development in accordance with their own needs and interests,

*Recognizing* the urgent need to respect and promote the inherent rights of indigenous peoples which derive from their political, economic and social structures and from their cultures, spiritual traditions, histories and philosophies, especially their rights to their lands, territories and resources,

*Recognizing* also the urgent need to respect and promote the rights of indigenous peoples affirmed in treaties, agreements and other constructive arrangements with States,

*Welcoming* the fact that indigenous peoples are organizing themselves for political, economic, social and cultural enhancement and in order to bring to an end all forms of discrimination and oppression wherever they occur,

*Convinced* that control by indigenous peoples over developments affecting them and their lands, territories and resources will enable them to maintain and strengthen their institutions, cultures and traditions, and to promote their development in accordance with their aspirations and needs,

1

*Recognizing* that respect for indigenous knowledge, cultures and traditional practices contributes to sustainable and equitable development and proper management of the environment,

*Emphasizing* the contribution of the demilitarization of the lands and territories of indigenous peoples to peace, economic and social progress and development, understanding and friendly relations among nations and peoples of the world,

*Recognizing* in particular the right of indigenous families and communities to retain shared responsibility for the upbringing, training, education and well-being of their children, consistent with the rights of the child,

*Considering* that the rights affirmed in treaties, agreements and other constructive arrangements between States and indigenous peoples are, in some situations, matters of international concern, interest, responsibility and character,

*Considering also* that treaties, agreements and other constructive arrangements, and the relationship they represent, are the basis for a strengthened partnership between indigenous peoples and States,

*Acknowledging* that the Charter of the United Nations, the International Covenant on Economic, Social and Cultural Rights (2) and the International Covenant on Civil and Political Rights,2 as well as the Vienna Declaration and Programme of Action,(3) affirm the fundamental importance of the right to self-determination of all peoples, by virtue of which they freely determine their political status and freely pursue their economic, social and cultural development,

*Bearing in mind* that nothing in this Declaration may be used to deny any peoples their right to self-determination, exercised in conformity with international law,

*Convinced* that the recognition of the rights of indigenous peoples in this Declaration will enhance harmonious and cooperative relations between the State and indigenous peoples, based on principles of justice, democracy, respect for human rights, non-discrimination and good faith,

*Encouraging* States to comply with and effectively implement all their obligations as they apply to indigenous peoples under international instruments, in particular those related to human rights, in consultation and cooperation with the peoples concerned,

*Emphasizing* that the United Nations has an important and continuing role to play in promoting and protecting the rights of indigenous peoples,

*Believing* that this Declaration is a further important step forward for the recognition, promotion and protection of the rights and freedoms of indigenous peoples and in the development of relevant activities of the United Nations system in this field,

*Recognizing* and reaffirming that indigenous individuals are entitled without discrimination to all human rights recognized in international law, and that indigenous peoples possess collective rights which are indispensable for their existence, well-being and integral development as peoples,

2

*Recognizing* that the situation of indigenous peoples varies from region to region and from country to country and that the significance of national and regional particularities and various historical and cultural backgrounds should be taken into consideration,

*Solemnly proclaims* the following United Nations Declaration on the Rights of Indigenous Peoples as a standard of achievement to be pursued in a spirit of partnership and mutual respect:

## Article 1
Indigenous peoples have the right to the full enjoyment, as a collective or as individuals, of all human rights and fundamental freedoms as recognized in the Charter of the United Nations, the Universal Declaration of Human Rights(4) and international human rights law.

## Article 2
Indigenous peoples and individuals are free and equal to all other peoples and individuals and have the right to be free from any kind of discrimination, in the exercise of their rights, in particular that based on their indigenous origin or identity.

## Article 3
Indigenous peoples have the right to self-determination. By virtue of that right they freely determine their political status and freely pursue their economic, social and cultural development.

## Article 4
Indigenous peoples, in exercising their right to self-determination, have the right to autonomy or self-government in matters relating to their internal and local affairs, as well as ways and means for financing their autonomous functions.

## Article 5
Indigenous peoples have the right to maintain and strengthen their distinct political, legal, economic, social and cultural institutions, while retaining their right to participate fully, if they so choose, in the political, economic, social and cultural life of the State.

## Article 6
Every indigenous individual has the right to a nationality.

## Article 7
1. Indigenous individuals have the rights to life, physical and mental integrity, liberty and security of person.
2. Indigenous peoples have the collective right to live in freedom, peace and security as distinct peoples and shall not be subjected to any act of genocide or any other act of violence, including forcibly removing children of the group to another group.

## Article 8
1. Indigenous peoples and individuals have the right not to be subjected to forced assimilation or destruction of their culture.
2. States shall provide effective mechanisms for prevention of, and redress for:
(a) Any action which has the aim or effect of depriving them of their integrity as distinct peoples, or of their cultural values or ethnic identities;

3

(b) Any action which has the aim or effect of dispossessing them of their lands, territories or resources;

(c) Any form of forced population transfer which has the aim or effect of violating or undermining any of their rights;

(d) Any form of forced assimilation or integration;

(e) Any form of propaganda designed to promote or incite racial or ethnic discrimination directed against them.

## Article 9

Indigenous peoples and individuals have the right to belong to an indigenous community or nation, in accordance with the traditions and customs of the community or nation concerned. No discrimination of any kind may arise from the exercise of such a right.

## Article 10

Indigenous peoples shall not be forcibly removed from their lands or territories. No relocation shall take place without the free, prior and informed consent of the indigenous peoples concerned and after agreement on just and fair compensation and, where possible, with the option of return.

## Article 11

1. Indigenous peoples have the right to practise and revitalize their cultural traditions and customs. This includes the right to maintain, protect and develop the past, present and future manifestations of their cultures, such as archaeological and historical sites, artefacts, designs, ceremonies, technologies and visual and performing arts and literature.

2. States shall provide redress through effective mechanisms, which may include restitution, developed in conjunction with indigenous peoples, with respect to their cultural, intellectual, religious and spiritual property taken without their free, prior and informed consent or in violation of their laws, traditions and customs.

## Article 12

1. Indigenous peoples have the right to manifest, practise, develop and teach their spiritual and religious traditions, customs and ceremonies; the right to maintain, protect, and have access in privacy to their religious and cultural sites; the right to the use and control of their ceremonial objects; and the right to the repatriation of their human remains.

2. States shall seek to enable the access and/or repatriation of ceremonial objects and human remains in their possession through fair, transparent and effective mechanisms developed in conjunction with indigenous peoples concerned.

## Article 13

1. Indigenous peoples have the right to revitalize, use, develop and transmit to future generations their histories, languages, oral traditions, philosophies, writing systems and literatures, and to designate and retain their own names for communities, places and persons.

2. States shall take effective measures to ensure that this right is protected and also to ensure that indigenous peoples can understand and be understood in political, legal and administrative proceedings, where necessary through the provision of interpretation or by other appropriate means.

4

**Article 14**
1. Indigenous peoples have the right to establish and control their educational systems and institutions providing education in their own languages, in a manner appropriate to their cultural methods of teaching and learning.
2. Indigenous individuals, particularly children, have the right to all levels and forms of education of the State without discrimination.
3. States shall, in conjunction with indigenous peoples, take effective measures, in order for indigenous individuals, particularly children, including those living outside their communities, to have access, when possible, to an education in their own culture and provided in their own language.

**Article 15**
1. Indigenous peoples have the right to the dignity and diversity of their cultures, traditions, histories and aspirations which shall be appropriately reflected in education and public information.
2. States shall take effective measures, in consultation and cooperation with the indigenous peoples concerned, to combat prejudice and eliminate discrimination and to promote tolerance, understanding and good relations among indigenous peoples and all other segments of society.

**Article 16**
1. Indigenous peoples have the right to establish their own media in their own languages and to have access to all forms of non-indigenous media without discrimination.
2. States shall take effective measures to ensure that State-owned media duly reflect indigenous cultural diversity. States, without prejudice to ensuring full freedom of expression, should encourage privately owned media to adequately reflect indigenous cultural diversity.

**Article 17**
1. Indigenous individuals and peoples have the right to enjoy fully all rights established under applicable international and domestic labour law.
2. States shall in consultation and cooperation with indigenous peoples take specific measures to protect indigenous children from economic exploitation and from performing any work that is likely to be hazardous or to interfere with the child's education, or to be harmful to the child's health or physical, mental, spiritual, moral or social development, taking into account their special vulnerability and the importance of education for their empowerment.
3. Indigenous individuals have the right not to be subjected to any discriminatory conditions of labour and, inter alia, employment or salary.

**Article 18**
Indigenous peoples have the right to participate in decision-making in matters which would affect their rights, through representatives chosen by themselves in accordance with their own procedures, as well as to maintain and develop their own indigenous decision-making institutions.

**Article 19**
States shall consult and cooperate in good faith with the indigenous peoples concerned through their own representative institutions in order to obtain their free, prior and informed consent before adopting and implementing legislative or administrative measures that may affect them.

## Article 20

1. Indigenous peoples have the right to maintain and develop their political, economic and social systems or institutions, to be secure in the enjoyment of their own means of subsistence and development, and to engage freely in all their traditional and other economic activities.

2. Indigenous peoples deprived of their means of subsistence and development are entitled to just and fair redress.

## Article 21

1. Indigenous peoples have the right, without discrimination, to the improvement of their economic and social conditions, including, inter alia, in the areas of education, employment, vocational training and retraining, housing, sanitation, health and social security.

2. States shall take effective measures and, where appropriate, special measures to ensure continuing improvement of their economic and social conditions. Particular attention shall be paid to the rights and special needs of indigenous elders, women, youth, children and persons with disabilities

## Article 22

1. Particular attention shall be paid to the rights and special needs of indigenous elders, women, youth, children and persons with disabilities in the implementation of this Declaration.

2. States shall take measures, in conjunction with indigenous peoples, to ensure that indigenous women and children enjoy the full protection and guarantees against all forms of violence and discrimination.

## Article 23

Indigenous peoples have the right to determine and develop priorities and strategies for exercising their right to development. In particular, indigenous peoples have the right to be actively involved in developing and determining health, housing and other economic and social programmes affecting them and, as far as possible, to administer such programmes through their own institutions.

## Article 24

1. Indigenous peoples have the right to their traditional medicines and to maintain their health practices, including the conservation of their vital medicinal plants, animals and minerals. Indigenous individuals also have the right to access, without any discrimination, to all social and health services.

2. Indigenous individuals have an equal right to the enjoyment of the highest attainable standard of physical and mental health. States shall take the necessary steps with a view to achieving progressively the full realization of this right.

## Article 25

Indigenous peoples have the right to maintain and strengthen their distinctive spiritual relationship with their traditionally owned or otherwise occupied and used lands, territories, waters and coastal seas and other resources and to uphold their responsibilities to future generations in this regard.

## Article 26

1. Indigenous peoples have the right to the lands, territories and resources which they have traditionally owned, occupied or otherwise used or acquired.

2. Indigenous peoples have the right to own, use, develop and control the lands, territories and resources that they possess by reason of traditional ownership or other traditional occupation or use, as well as those which they have otherwise acquired.

3. States shall give legal recognition and protection to these lands, territories and resources. Such recognition shall be conducted with due respect to the customs, traditions and land tenure systems of the indigenous peoples concerned.

6

**Article 27**
States shall establish and implement, in conjunction with indigenous peoples concerned, a fair, independent, impartial, open and transparent process, giving due recognition to indigenous peoples' laws, traditions, customs and land tenure systems, to recognize and adjudicate the rights of indigenous peoples pertaining to their lands, territories and resources, including those which were traditionally owned or otherwise occupied or used. Indigenous peoples shall have the right to participate in this process.

**Article 28**
1. Indigenous peoples have the right to redress, by means that can include restitution or, when this is not possible, just, fair and equitable compensation, for the lands, territories and resources which they have traditionally owned or otherwise occupied or used, and which have been confiscated, taken, occupied, used or damaged without their free, prior and informed consent.
2. Unless otherwise freely agreed upon by the peoples concerned, compensation shall take the form of lands, territories and resources equal in quality, size and legal status or of monetary compensation or other appropriate redress.

**Article 29**
1. Indigenous peoples have the right to the conservation and protection of the environment and the productive capacity of their lands or territories and resources. States shall establish and implement assistance programmes for indigenous peoples for such conservation and protection, without discrimination.
2. States shall take effective measures to ensure that no storage or disposal of hazardous materials shall take place in the lands or territories of indigenous peoples without their free, prior and informed consent.
3. States shall also take effective measures to ensure, as needed, that programmes for monitoring, maintaining and restoring the health of indigenous peoples, as developed and implemented by the peoples affected by such materials, are duly implemented.

**Article 30**
1. Military activities shall not take place in the lands or territories of indigenous peoples, unless justified by a relevant public interest or otherwise freely agreed with or requested by the indigenous peoples concerned.
2. States shall undertake effective consultations with the indigenous peoples concerned, through appropriate procedures and in particular through their representative institutions, prior to using their lands or territories for military activities.

**Article 31**
1. Indigenous peoples have the right to maintain, control, protect and develop their cultural heritage, traditional knowledge and traditional cultural expressions, as well as the manifestations of their sciences, technologies and cultures, including human and genetic resources, seeds, medicines, knowledge of the properties of fauna and flora, oral traditions, literatures, designs, sports and traditional games and visual and performing arts. They also have the right to maintain, control, protect and develop their intellectual property over such cultural heritage, traditional knowledge, and traditional cultural expressions.
2. In conjunction with indigenous peoples, States shall take effective measures to recognize and protect the exercise of these rights.

7

**Article 32**

1. Indigenous peoples have the right to determine and develop priorities and strategies for the development or use of their lands or territories and other resources.

2. States shall consult and cooperate in good faith with the indigenous peoples concerned through their own representative institutions in order to obtain their free and informed consent prior to the approval of any project affecting their lands or territories and other resources, particularly in connection with the development, utilization or exploitation of mineral, water or other resources.

3. States shall provide effective mechanisms for just and fair redress for any such activities, and appropriate measures shall be taken to mitigate adverse environmental, economic, social, cultural or spiritual impact.

**Article 33**

1. Indigenous peoples have the right to determine their own identity or membership in accordance with their customs and traditions. This does not impair the right of indigenous individuals to obtain citizenship of the States in which they live.

2. Indigenous peoples have the right to determine the structures and to select the membership of their institutions in accordance with their own procedures.

**Article 34**

Indigenous peoples have the right to promote, develop and maintain their institutional structures and their distinctive customs, spirituality, traditions, procedures, practices and, in the cases where they exist, juridical systems or customs, in accordance with international human rights standards.

**Article 35**

Indigenous peoples have the right to determine the responsibilities of individuals to their communities.

**Article 36**

1. Indigenous peoples, in particular those divided by international borders, have the right to maintain and develop contacts, relations and cooperation, including activities for spiritual, cultural, political, economic and social purposes, with their own members as well as other peoples across borders.

2. States, in consultation and cooperation with indigenous peoples, shall take effective measures to facilitate the exercise and ensure the implementation of this right.

**Article 37**

1. Indigenous peoples have the right to the recognition, observance and enforcement of treaties, agreements and other constructive arrangements concluded with States or their successors and to have States honour and respect such treaties, agreements and other constructive arrangements.

2. Nothing in this Declaration may be interpreted as diminishing or eliminating the rights of indigenous peoples contained in treaties, agreements and other constructive arrangements.

**Article 38**

States in consultation and cooperation with indigenous peoples, shall take the appropriate measures, including legislative measures, to achieve the ends of this Declaration.

**Article 39**

Indigenous peoples have the right to have access to financial and technical assistance from States and through international cooperation, for the enjoyment of the rights contained in this Declaration.

8

## Article 40

Indigenous peoples have the right to access to and prompt decision through just and fair procedures for the resolution of conflicts and disputes with States or other parties, as well as to effective remedies for all infringements of their individual and collective rights. Such a decision shall give due consideration to the customs, traditions, rules and legal systems of the indigenous peoples concerned and international human rights

## Article 41

The organs and specialized agencies of the United Nations system and other intergovernmental organizations shall contribute to the full realization of the provisions of this Declaration through the mobilization, inter alia, of financial cooperation and technical assistance. Ways and means of ensuring participation of indigenous peoples on issues affecting them shall be established.

## Article 42

The United Nations, its bodies, including the Permanent Forum on Indigenous Issues, and specialized agencies, including at the country level, and States shall promote respect for and full application of the provisions of this Declaration and follow up the effectiveness of this Declaration.

## Article 43

The rights recognized herein constitute the minimum standards for the survival, dignity and well-being of the indigenous peoples of the world.

## Article 44

All the rights and freedoms recognized herein are equally guaranteed to male and female indigenous individuals.

## Article 45

Nothing in this Declaration may be construed as diminishing or extinguishing the rights indigenous peoples have now or may acquire in the future.

## Article 46

1. Nothing in this Declaration may be interpreted as implying for any State, people, group or person any right to engage in any activity or to perform any act contrary to the Charter of the United Nations or construed as authorizing or encouraging any action which would dismember or impair, totally or in part, the territorial integrity or political unity of sovereign and independent States.
2. In the exercise of the rights enunciated in the present Declaration, human rights and fundamental freedoms of all shall be respected. The exercise of the rights set forth in this Declaration shall be subject only to such limitations as are determined by law and in accordance with international human rights obligations. Any such limitations shall be non-discriminatory and strictly necessary solely for the purpose of securing due recognition and respect for the rights and freedoms of others and for meeting the just and most compelling requirements of a democratic society.
3. The provisions set forth in this Declaration shall be interpreted in accordance with the principles of justice, democracy, respect for human rights, equality, non-discrimination, good governance and good faith.

(2) See resolution 2200 A (XXI), annex.

(3) A/CONF.157/24 (Part I), chap. III.

(4) Resolution 217 A (III).

# Universal Declaration of Human Rights (1948)

## Introduction

[CIRP Note: The *Universal Declaration of Human Rights* (1948) was drafted by the UN Commission on Human Rights in 1947 and 1948. The Declaration was adopted by the United Nations General Assembly on 10 December 1948.

Amongst other human rights, this declaration enunciates certain fundamental human rights of every human being which are which are of special interest in the study of the ethics of circumcision. They are the rights to security of person, to freedom from torture and other cruel and unusual treatment, and to privacy. Motherhood and childhood have a right to special protection.]

[This file includes only those articles relevant to the protection of children from male circumcision.]

## Universal Declaration of Human Rights
### PREAMBLE

*Whereas* recognition of the inherent dignity and of the equal and inalienable rights of all members of the human family is the foundation of freedom, justice and peace in the world,

*Whereas* disregard and contempt for human rights have resulted in barbarous acts which have outraged the conscience of mankind, and the advent of a world in which human beings shall enjoy freedom of speech and belief and freedom from fear and want has been proclaimed as the highest aspiration of the common people,

*Whereas* it is essential, if man is not to be compelled to have recourse, as a last resort, to rebellion against tyranny and oppression, that human rights should be protected by the rule of law,

*Whereas* it is essential to promote the development of friendly relations between nations,

*Whereas* the peoples of the United Nations have in the Charter reaffirmed their faith in fundamental human rights, in the dignity and worth of the human person and in the equal rights of men and women and have determined to promote social progress and better standards of life in larger freedom,

*Whereas* Member States have pledged themselves to achieve, in cooperation with the United Nations, the promotion of universal respect for and observance of human rights and fundamental freedoms,

*Whereas* a common understanding of these rights and freedoms is of the greatest importance for the full realization of this pledge,

Now, therefore,

# The General Assembly

*proclaims*

## This Universal Declaration of Human Rights

as a common standard of achievement for all peoples and all nations, to the end that every individual and every organ of society, keeping this Declaration constantly in mind, shall strive by teaching and education to promote respect for these rights and freedoms and by progressive measures, national and international, to secure their universal and effective recognition and observance, both among the peoples of Member States themselves and among the peoples of territories under their jurisdiction.

### *Article I*

All human beings are born free and equal in dignity and rights. They are endowed with reason and conscience and should act towards one another in a spirit of brotherhood.

### *Article 2*

Everyone is entitled to all the rights and freedoms set forth in this Declaration, without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status.

Furthermore, no distinction shall be made on the basis of the political, jurisdictional or international status of the country or territory to which a person belongs, whether it be independent, trust, non-self-governing or under any other limitation of sovereignty.

### *Article 3*

Everyone has the right to life, liberty and security of person.

### *Article 4*

No one shall be held in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms.

### *Article 5*

No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment.

### *Article 6*

Everyone has the right to recognition everywhere as a person before the law.

2

### *Article 7*

All are equal before the law and are entitled without any discrimination to equal protection of the law. All are entitled to equal protection against any discrimination in violation of this Declaration and against any incitement to such discrimination.

### *Article 8*

Everyone has the right to an effective remedy by the competent national tribunals for acts violating the fundamental rights granted him by the constitution or by law.

### *Article 9*

No one shall be subjected to arbitrary arrest, detention or exile.

### *Article 10*

Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations and of any criminal charge against him.

### *Article 11*

(1) Everyone charged with a penal offence has the right to be presumed innocent until proved guilty according to law in a public trial at which he has had all the guarantees necessary for his defence.

(2) No one shall be held guilty of any penal offence on account of any act or omission which did not constitute a penal offence, under national or international law, at the time when it was committed. Nor shall a heavier penalty be imposed than the one that was applicable at the time the penal offence was committed.

### *Article 12*

No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence, nor to attacks upon his honour and reputation. Everyone has the right to the protection of the law against such interference or attacks.

### *Article 13*

(1) Everyone has the right to freedom of movement and residence within the borders of each State.

(2) Everyone has the right to leave any country, including his own, and to return to his country.

3

### *Article 14*

(1) Everyone has the right to seek and to enjoy in other countries asylum from persecution.

(2) This right may not be invoked in the case of prosecutions genuinely arising from non-political crimes or from acts contrary to the purposes and principles of the United Nations.

### *Article 15*

(1) Everyone has the right to a nationality.

(2) No one shall be arbitrarily deprived of his nationality nor denied the right to change his nationality.

### *Article 16*

(1) Men and women of full age, without any limitation due to race, nationality or religion, have the right to marry and to found a family. They are entitled to equal rights as to marriage, during marriage and at its dissolution.

(2) Marriage shall be entered into only with the free and full consent of the intending spouses.

(3) The family is the natural and fundamental group unit of society and is entitled to protection by society and the State.

### *Article 17*

(1) Everyone has the right to own property alone as well as in association with others.

(2) No one shall be arbitrarily deprived of his property.

### *Article 18*

Everyone has the right to freedom of thought, conscience and religion; this right includes freedom to change his religion or belief, and freedom, either alone or in community with others and in public or private, to manifest his religion or belief in teaching, practice, worship and observance.

### *Article 19*

Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers.

### *Article 20*

(1) Everyone has the right to freedom of peaceful assembly and association.

(2) No one may be compelled to belong to an association.

4

### *Article 21*

(1) Everyone has the right to take part in the government of his country, directly or through freely chosen representatives.

(2) Everyone has the right to equal access to public service in his country.

(3) The will of the people shall be the basis of the authority of government; this will shall be expressed in periodic and genuine elections which shall be by universal and equal suffrage and shall be held by secret vote or by equivalent free voting procedures.

### *Article 22*

Everyone, as a member of society, has the right to social security and is entitled to realization, through national effort and international co-operation and in accordance with the organization and resources of each State, of the economic, social and cultural rights indispensable for his dignity and the free development of his personality.

### *Article 23*

(1) Everyone has the right to work, to free choice of employment, to just and favourable conditions of work and to protection against unemployment.

(2) Everyone, without any discrimination, has the right to equal pay for equal work.

(3) Everyone who works has the right to just and favourable remuneration ensuring for himself and his family an existence worthy of human dignity, and supplemented, if necessary, by other means of social protection.

(4) Everyone has the right to form and to join trade unions for the protection of his interests.

### *Article 24*

Everyone has the right to rest and leisure, including reasonable limitation of working hours and periodic holidays with pay.

### *Article 25*

(1) Everyone has the right to a standard of living adequate for the health and well-being of himself and of his family, including food, clothing, housing and medical care and necessary social services, and the right to security in the event of unemployment, sickness, disability, widowhood, old age or other lack of livelihood in circumstances beyond his control.

(2) Motherhood and childhood are entitled to special care and assistance. All children, whether born in or out of wedlock, shall enjoy the same social protection.

5

## *Article 26*

(1) Everyone has the right to education. Education shall be free, at least in the elementary and fundamental stages. Elementary education shall be compulsory. Technical and professional education shall be made generally available and higher education shall be equally accessible to all on the basis of merit.

(2) Education shall be directed to the full development of the human personality and to the strengthening of respect for human rights and fundamental freedoms. It shall promote understanding, tolerance and friendship among all nations, racial or religious groups, and shall further the activities of the United Nations for the maintenance of peace.

(3) Parents have a prior right to choose the kind of education that shall be given to their children.

## *Article 27*

(1) Everyone has the right freely to participate in the cultural life of the community, to enjoy the arts and to share in scientific advancement and its benefits.

(2) Everyone has the right to the protection of the moral and material interests resulting from any scientific, literary or artistic production of which he is the author.

## *Article 28*

Everyone is entitled to a social and international order in which the rights and freedoms set forth in this Declaration can be fully realized.

## *Article 29*

(1) Everyone has duties to the community in which alone the free and full development of his personality is possible.

(2) In the exercise of his rights and freedoms, everyone shall be subject only to such limitations as are determined by law solely for the purpose of securing due recognition and respect for the rights and freedoms of others and of meeting the just requirements of morality, public order and the general welfare in a democratic society.

(3) These rights and freedoms may in no case be exercised contrary to the purposes and principles of the United Nations.

## *Article 30*

Nothing in this Declaration may be interpreted as implying for any State, group or person any right to engage in any activity or to perform any act aimed at the destruction of any of the rights and freedoms set forth herein.

**G.A. res. 217A (III), U.N. Doc A/810 at 71 (1948)**

*Adopted on December 10, 1948*
*by the General Assembly of the United Nations (without dissent)*

*Exhibit J*

# 18945 Fielding St, Detroit, MI 48219



**Foreclosed**

Foreclosure Est: $19,169

Below Zestimate®: $11,750 (38.0%)

| | |
|---|---|
| **Bedrooms:** | Contact for details |
| **Bathrooms:** | 1 bath |
| **Single Family:** | 800 sq ft |
| **Lot:** | 4,312 sq ft |
| **Year Built:** | 1947 |
| **Heating Type:** | Forced air |

Map    Bird's Eye    Street View

Claim this home    Saved    Add note    Get updates    Email    more ▾

## Foreclosure Information

| | | | |
|---|---|---|---|
| NOV 16 2012 | Foreclosed | $103,599 | The lender, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS**, has taken ownership of this property through a foreclosure auction for the amount of **$103,599**. The lender may list it for sale as a foreclosure property in the future. |
| | | | Zillow's Foreclosure Estimate predicts this property will sell for **$19,169**. |
| DEC 29 2010 | Foreclosure auction | $84,530 unpaid balance | The owner of this property was served a Notice of Sale, which led to foreclosure and the lender taking ownership. A foreclosure auction was held on **12/29/10**. |
| | Home in default | | Public records indicate the owner of this property is in pre-foreclosure. |
| | Loan issued | | A loan was issued by **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS**. |

More foreclosure information    Learn more at Zillow Foreclosure Center

## Description

This is a 800 square foot, 1.0 bathroom, single family home. It is located at 18945 Fielding St Detroit, Michigan.

| **Cooling** Unknown | **Parking** Unknown | **Basement Type** Unknown |
|---|---|---|
| **Fireplace** Unknown | **Floor Covering** Unknown | **Attic** Unknown |

▾ More    See data sources

**You are now receiving alerts**

This foreclosure home is saved as a favorite and you will receive updates on it.

Remove from favorites

**Contact a foreclosure specialist**

Find foreclosure specialists in your area. Visit our professional directory.

Find a foreclosure specialist



**Buying a home?** We're ready to help. Get $250 off closing costs for your home purchase.

▸ Get Prequalified

**Similar Homes for Sale**



19013 Burt Rd, Detroit, ...

**For Sale:** $29,900

Beds: 3    Sqft: 1091
Baths: 2.0    Lot: 6098



19419 Pierson St, Detro...

**For Sale:** $30,000

Beds: 3    Sqft: 821
Baths: 1.0    Lot: 5663



Listed By:

19210 Trinity St, Detroit...

**For Sale:** $29,000

Beds: 4    Sqft: 1285
Baths: 2.0    Lot: 5532

See listings near 18945 Fielding St



**Zillow Digs™**
Discover your dream kitchen

See more ideas ❯

**Nearby Similar Sales**

19171 Fielding St, Detroit, MI 48219

Sold on 3/12/2013: $10,000

**Nearby Cities**

Canton
Dearborn Heights
Dearborn
Detroit
Lincoln Park
Livonia
Plymouth Township
Redford
Taylor
Westland
Aviation Sub
Boston Edison
Bricktown
Cherry Island
Maple Beach
Martinsville
West Sumpter

**Nearby Neighborhoods**

Bagley
Barton-McFarland
Brightmoor
Conners Creek
Fort Wayne
Franklin Park
Grandmont-Rosedale
Morningside
Oak
Petosky-Otsego
Southwest Detroit
Springwells
Warrendale

**Nearby Zip Codes**

48111
48205
48219
48221
48224
48227
48228
48234
48235
48239

**Other Detroit Topics**

Apartments for Rent in 48219
Houses for Sale in 48219
Houses for Rent in 48219
48219 Real Estate
Detroit Condos
Houses for Sale in Detroit
Newest Listings in Detroit
Detroit Home Values
Detroit Real Estate Agents
Detroit Refinance
Detroit Mortgage Rates

18945 Fielding St, Detroit, MI, 48219 is a single family home of 800 sqft on a lot of 4,312 sqft (or 0.10 acres). Zillow's Zestimate® for 18945 Fielding St is $30,919 and the Rent Zestimate® is $736/mo. This single family home has 1 bath and was built in 1947. The 3 bed single family home at 19013 Burt Rd in Detroit is comparable and for sale for $29,900. This home is located in Detroit in zip code 48219. Bagley and Barton-McFarland are nearby neighborhoods. The closest ZIP codes are 48111 and 48205. Canton, Dearborn Heights, and Dearborn are the nearest cities.

About        Zestimates        Jobs        Help        Advertise        Terms of Use & Privacy Policy                    Blog

Yahoo!-Zillow Real Estate Network        © 2006-2013 Zillow        Follow us   🐦   f   g+

FILE DO NOT MAIL

2011 MAR -1 AM 11:13

**M STATE OF MICHIGAN**
Wayne County
March 01, 2011  11:13:00 AM
Receipt # 42365

**REAL ESTATE TRANSFER TAX**
$122.10 - CO
$0.00 - ST
Stamp # 213700

Bernard J. Youngblood
Wayne County Register of Deeds
March 01, 2011  11:13 AM
Liber 49006 Page 1439-1444
#2011055872  SHD  FEE: $30.00

*2-16-11*
*3-1-11*

112335F03 Snead - FC X

## SHERIFF'S DEED ON MORTGAGE SALE

This Indenture Made this 16th day of February, A.D. 2011, between, _____ **Ralph Leggat** _____, a Deputy Sheriff in and for Wayne County, Michigan, whose address is 1231 Saint Antoine St Detroit, Michigan 48226-2300 , party of the first part, and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate Holders of CWABS 2004-05, whose address is 7105 Corporate Dr # PTX-B-32, Plano, TX 75024-4100 , party of the second part (hereinafter called the grantee).

WITNESSETH, That Whereas a certain mortgage made by John Snead, A Married Man and Enola Snead, His Wife, original mortgagor(s), to Mortgage Electronic Registration Systems, Inc., as nominee for lender and lender's successors and/or assigns, Mortgagee, dated April 28, 2004, and recorded on June 7, 2004 in Liber 40734 on Page 540, and assigned by said Mortgagee to The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate Holders of CWABS 2004-05 as assignee as documented by an assignment dated September 29, 2009 recorded on October 2, 2009 in Liber 48148 on Page 798, in Wayne county records, Michigan and

WHEREAS, said mortgage contained a power of sale which has become operative by reason of a default in the condition of said mortgage, and

WHEREAS, no suit or proceedings at law or in equity have been instituted to recover the debt secured by said mortgage or any part thereof, and

WHEREAS, by virtue of said power of sale, and pursuant to the statute of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in said mortgage, that the said premises, or some part of them, would be sold at 1:00 PM on the 2nd day of December, A.D. 2009 (sale adjourned from December 2, 2009 to February 16, 2011), at public vendue, that being the place of holding the Circuit Court for Wayne County where the premises are situated, and

WHEREAS, pursuant to said notice I did, at on the day last aforesaid, expose for sale at public vendue the said lands and tenements hereinafter described, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of One Hundred Ten Thousand Eight Hundred Eighty-Two and 53/100 Dollars ($110,882.53), that being the highest bid therefore and the grantee being the highest bidder, and

WHEREAS, said lands and tenements are situated in the City of Detroit, Wayne County, Michigan, more particularly described in exhibit A, attached and commonly known as:

16734 Lamphere St
Property Tax Parcel ID 22-116352 Lot 19, 22-116351, Lot 20
This property may be located within the vicinity of farmland or a farm operation. Generally, accepted agricultural and management practices, which may generate noise, dust, odors, and other associated conditions, may be used and are protected by the Michigan right to farm act.

Now, this Indenture Witnesseth, That I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain and sell unto the grantee, its successors and assigns, forever, all the estate, right, title and interest, which the said Mortgagor(s) had in said land and tenements and every part thereof, on the 28th day of April A.D. 2004, that being the date of said mortgage, or at any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoof forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could or ought to sell the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the date and year first above written.

*foreed.*
*40734-540*

*concers*
*L-19 + 20*

Ralph Leggat   _Ralph Leggat_

Deputy Sheriff in and for the County of Wayne

STATE OF MICHIGAN
COUNTY OF WAYNE

On this 16th day of February, A.D. 2011, before me, a Notary Public in and for said County of Wayne came _____ Ralph Leggat _____, a Deputy Sheriff of said County, known to me to be the individual described in and who executed the above conveyance, and who acknowledged that he executed the same to be his free act and deed as such Deputy Sheriff.

_Laura DeAment_

Notary Public, Wayne County, Michigan
My commission expires:
Acting in the county of Wayne

*6 months*
*expires*
*8-16-2011*

THIS INSTRUMENT IS EXEMPT FROM MICHIGAN TRANSFER TAX UNDER MCL 207.526(v)

*MCL 207.526(v)*

Notary Public, Wayne County
Appointed ...
Acting ...
Appointment expires on 7/15/2014



Benny N. Napoleon
*Wayne County Sheriff*

May 13, 2013


Usir El Bey
18701 Grand River, Ste. 184
Detroit, MI  48223

> **RE:**   **Freedom of Information Act (FOIA) request of April 29, 2013, requesting records of a Sheriff Deed of Mortgage Sale for property known as 16734 Lamphere, held on February 16, 2011 by Ralph Leggatt.**

Dear Mr. Bey:

The above request has been received and reviewed.  After a diligent search for the requested records, I have determined and certify the records do not exist in the Wayne County Sheriff's Office.  Therefore, your request is denied.

If you can provide more specific information, your request will be reviewed to determine whether the desired records exist.

You have the right to do either of the following:

> 1.)   Submit a written appeal to the County Executive, which specifically States the word "appeal" and states the reason or reasons the denial should be reversed.

> **OR**

> 2.)   Commence an action in the Circuit Court to compel disclosure. Should you prevail, you will be entitled to have reasonable attorney's fees, costs and disbursements assessed against the County by the court. If you or the County prevails in part, the court

Page 2
Letter To:  Usir El Bey
Re:  Sheriff Deed of Mortgage Sale Regarding Ralph Leggat

       may in its discretion, award you all or an appropriate portion of reasonable attorneys' fees, costs and disbursements. If the court determines that the County has been arbitrary and capricious in its denial, you will be entitled to, in addition to actual damages, punitive damages in the amount of $500.00.

Sincerely,

                                                Denial approved:

James E. Spivey, P44484
Deputy Chief
Wayne County Sheriff Office

                                            John Khappmann
                                            Assistant Corporation Counsel
                                            Office of Corporation Counsel
                                            Date: 5|15|13

JS:JK

cdg

cc: Valerie Denha
      File 13-227